**Carlton Raymond OWENS, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–76–557.**

Court of Criminal Appeals of Oklahoma.

Nov. 30, 1976.

**458**

John Connolly, Oklahoma City, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Toby Mash, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

Appellant, Carlton Raymond Owens, hereinafter referred to as defendant, was charged in the District Court, Oklahoma County, Case Nos. CRF–75–3976 and CRF–75–3979, for the offense of Robbery With Firearms, After Former Conviction of a Felony, in violation of 21 O.S.Supp. 1973, § 801. He was tried to a jury, and convicted. Punishment was assessed at thirty (30) years' imprisonment. From said judgment and sentence a timely appeal has been perfected to this Court.

The prosecution's initial witness was Gernemer Staples, who stated that on the 2nd day of May, 1975, she was the proprietor of the Chances Are Cafe, 312 N.E.2nd Street, Oklahoma City. On that day defendant and several other persons, present in the cafe for some time, motioned her to come into a back area. Defendant then displayed a revolver and ordered her to lie on the floor. She also testified that another employee was summoned and also ordered into the same position by the defendant, who then proceeded upon threats of death to search and rob them. Staples positively identified the defendant as her assailant, having known him prior to the incident.

The State's second witness was Hurtis Deverous, who testified that he too was an employee of the Chances Are Cafe on the date in question, and that he was forced by the defendant to lie on the floor near Staples and was robbed. Deverous also made a positive identification of the defendant.

The third witness for the State, Frank Posey, stated that on the 2nd day of May, 1975, he was a customer in the Chances Are Cafe and that he was seated in such a position as to be able to observe the events occurring in the aforementioned "back area." He stated that he saw the defendant brandish a revolver and force Staples and Deverous to lie on the floor. Posey then testified that at about this time he entered a rear kitchen where a demand was made upon him by a third party, to hand over his money. He refused. With this witness, the State rested.

Defendant's first witness was Andrew McKinney, who said that he was in the

cafe at the time of the incident, that he observed no robbery, but that he did hear an argument between defendant and the victims concerning narcotics. The substance of the argument was that the persons involved in the alleged robbery were trying to get back money which they had paid for narcotics, which later proved to be impotent.

Defendant's second witness, William Whitworth, also testified that he was present and that he had gone to the cafe to retrieve from Staples money paid for bad drugs. He stated that Staples had, in fact, voluntarily returned such money. He also stated that no robbery had taken place.

The defendant then took the stand and gave evidence that was largely corroborative of Whitworth's. He stated that he was not in possession of a gun at the time, nor did he own one, and that the money which he had received from Staples was given to him voluntarily as a debt owed for bad drugs. The defense then rested.

The State's first rebuttal witness was Bessie Hans, employed by the State Welfare Department, who testified as to the good reputation of Staples and the Chances Are Cafe.

Zenobia Posey was the State's second rebuttal witness, and her testimony corroborated that of Hans'. She also stated that she was in the kitchen of the Chances Are Cafe on May 2, and that certain events led her to believe a robbery was in progress, but that she remained in the kitchen and observed nothing.

John Reed was the State's third rebuttal witness and he testified to the good reputation of the victims.

Frank Posey was then recalled by the State and testified that he was present and heard no argument concerning narcotics. Hurtis Deverous was recalled by the State, and denied that such an argument occurred. He also denied being involved in narcotics. Gernemer Staples was recalled and gave similar testimony. John Burke,

insurance agent, then testified to the good reputation of the victims and of the Chances Are Cafe.

Carolyn Price was the State's last rebuttal witness. She stated that she was employed by the Oklahoma County Court Clerk's Office. She testified as to witness Andrew McKinney's prior criminal record, stating that he had been convicted of three felonies. The State then rested.

Leslie Battles was the defense's only rebuttal witness. She stated that she was the sister of witness Andrew McKinney and that he had only been in prison once. It was during the cross-examination of this witness that the basis for this appeal was first introduced into the record. In response to a question from District Attorney Geb, whether she was in court to help her brother Andrew McKinney, she stated, at page 162 of the transcript of trial, as follows:

"Yes, sir. When I heard you sit over there and you questioned him and sat there and say, 'I'm going to send that son-of-bitch to the penitentiary,' and then filed a warrant against him for this robbery case, I sure am trying to help my brother."

At this point, however, the substance of this statement was not put in issue by either the prosecution or the defense.

After the dismissal of this witness, the defense rested and upon the instructions of the court the jury was allowed to retire and deliberate the verdict. A guilty verdict was returned and court was recessed until the following morning, when the penalty phase of the trial would begin.

The following morning, in open court but before the jury was brought in, defense raised its objection to the alleged remark of Mr. Geb. The court noted that it had heard the remark but did not recognize the speaker or to whom it was directed. Leslie Battles was then recalled and she reiterated her testimony as to what she had heard, adding that her brother Andrew

McKinney had been arrested upon leaving the courtroom. After she was dismissed defense moved to set aside the verdict, alleging that the statements by Geb so intimidated several witnesses who happened to overhear it that they thereafter refused to testify, and that defendant was thus denied a fair trial. The motion was denied and from that denial defendant appeals.

We must affirm the conviction. It is a basic tenet of Oklahoma criminal law that in order for an assignment of error to be considered on appeal it must be properly preserved in the record. Objections must be made at trial, and exceptions taken to adverse rulings of the trial court. See, *Gee v. State*, Okl.Cr., 538 P.2d 1102 (1975). This is as true for objections to prosecutorial misconduct as it is for the admission of evidence, or any other trial irregularity. The only question in this respect is whether the defendant's objection made after the jury verdict had been returned, was timely.

In an extraordinary case where the defense has no knowledge of the misconduct until after the verdict is in, an objection might properly be raised for the first time on a motion for new trial, or on appeal. But, such is not the present case. There is ample evidence from which we can conclude that defendant knew or should have known of the alleged remark before the jury retired to deliberate.

The most obvious evidence is contained in the record in the testimony of defense witness Leslie Battles. She testified that the statement was made and it was at this point that objection should have been presented, and demand made for a mistrial. The defense was silent, however, and as such any objection was thereby waived. While such a procedure may seen harsh, it is entirely necessary, for without formal objections the trial court has no opportunity to correct the error. While most of the reported cases dealing with prejudicial remarks by the prosecutor concern the effect they have upon the jury and there is no contention here that the jury heard the remark, we feel that the rule, as laid down in cases such as *Newton v. State*, Okl.Cr., 516 P.2d 827 (1973), is the same for this case. That is, timely objections must be made.

Additionally, it must be noted that a defendant has the right to call any witness whom he desires and is entitled to compulsory process to insure the witness' compliance. Why the two witnesses allegedly dissuaded from testifying by the prosecutor's remark were not called is not evident from the record. This in itself is not determinative. However, by inference at least, it could be said that from a time shortly after witness McKinney testified defense must have been aware of the remark, since two of the defense witnesses having heard it refused to testify. Surely, counsel for the defense must have inquired why. Having learned the reason, an objection should have been raised.

Thus, upon strong inference and upon testimony actually given before the jury retired, the defense had reason to know of the alleged prejudicial remark. To fail to raise the issue by proper objection and exception constitutes a waiver of the same. One cannot remain silent and speculate on the outcome of the verdict, and then, having suffered an adverse decision, raise the issue for the first time on a motion to set aside the verdict. Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P. J., and BUSSEY, J., concur.