In re Edward Blackman HILL, Debtor.

Kenneth L. McDONALD, Trustee, Plaintiff,

v.

NATIONAL BANK OF STIGLER, Defendant,

Edward D. Hill, Intervener.

Bankruptcy No. Bk–79–02110. Adv. No. 80–0003.

United States Bankruptcy Court, W. D. Oklahoma.

Dec. 3, 1980.

Richard R. Bailey, Oklahoma City, Okl., for Kenneth L. McDonald, trustee.

Albert W. Murry, Oklahoma City, Okl., for Edward D. Hill, intervener.

## OPINION

DAVID KLINE, Bankruptcy Judge.

### STATEMENT

The trustee brought this action challenging a lien on a motorboat asserted by defendant National Bank of Stigler. Edward D. Hill then intervened and urged that both he and the bank had perfected security interests in said property under Oklahoma's Uniform Commercial Code by virtue of the intervener's physical possession of said boat prior to the Code petition filing.

### FACTS

In February of 1979 the debtor, Edward Blackman Hill, made arrangements with a credit union in Oklahoma City to finance the purchase of a motorboat. Later when the debtor left his Oklahoma City place of employment, he was asked by the credit union to refinance.

On September 6, 1979 the debtor executed a promissory note and security agreement with the First National Bank of Stigler, Oklahoma, granting the bank a security interest in the boat. Edward D. Hill, the debtor's father and intervener herein was co–maker on the note.

The debtor testified that the boat was stored at the intervener's home in Stigler, Oklahoma and was removed from time to time for use at a nearby lake; that the last time he used the boat was probably in July of 1979 and that he hasn't had possession of it since then; and that the boat was stored in his father's garage because he had "no other place to put it." The intervener did not testify. Moreover, there is no evidence that the debtor attempted to grant the intervener a security interest.

On November 27, 1979 the debtor filed his voluntary petition in bankruptcy. On November 30, 1979 the bank filed a financing statement in an effort to perfect its security interest under Oklahoma's Uniform Commercial Code. The trustee then brought this adversary proceeding challenging the bank's claim of lien. Thereafter, Edward Hill intervened and asserted a security interest in the boat by virtue of boat possession since July of 1979.

### LAW

#### "Accommodation Party"

12A Okl.Stat. (1971) § 3–415 provides in part:

"(1) An accommodation party is one who signs the instrument in any capacity for the purpose of lending his name to another party to it.

"(2) When the instrument has been taken for value before it is due the accommodation party is liable in the capacity in which he has signed even though the taker knows of the accommodation.

\*　　\*　　\*　　\*　　\*　　\*

"(5) An accommodation party is not liable to the party accommodated, and if he pays the instrument has a right of recourse on the instrument against such party."

Thus, where a person's signature appears on a note as a co–maker, but it is signed as an accommodation for another, such person is an accommodation party—more specifically an accommodation *maker*. And where a bank takes the note for value before it is due, the accommodation party is liable on the note as that of a maker even though the bank knew of the accommoda-

tion status. As a maker, the accommodation party is jointly and severally liable on the note. See *Vinick v. Fourth National Bank of Tulsa*, 531 P.2d 327 (Okl.S.Ct.1974).

### "Surety"

Accommodation parties are also accorded surety status. The Supreme Court of Oklahoma in *King v. Finnell*, 603 P.2d 754, 757 (Okl.1979) through Justice Barnes stated:

"Under both the Uniform Commercial Code and pre–code Oklahoma law, an accommodation party is a surety.

"Uniform Commercial Code Comment: 1 to Section 3–415 provides in part:

1. *Subsection (1) recognizes that an accommodation party is always a surety (which includes a guarantor)*, and it is his only distinguishing feature. He differs from other sureties only in that his liability is on the instrument and he is a surety for another party to it. His obligation is therefore determined by the capacity in which he signs. An accommodation maker or acceptor is bound on the instrument without any resort to his principal. *While an accommodation indorser may be liable only after presentment, notice of dishonor and protest.*" (Emphasis added)

15 Okl.Stat. (1971) § 382 provides:

"A surety, upon satisfying the obligations of the principal, is entitled to enforce every remedy which the creditor then has against the principal, to the extent of reimbursing what he was expended; and also to require all his co–sureties to contribute thereto, without regard to the order of time in which they became such."

In addition, 15 Okl.Stat. (1971) § 383 provides:

"A surety is entitled to the benefit of every security for the performance of the principal obligation, held by the creditor or by a co–surety, at the time of entering into the contract of suretyship, or acquired by him afterwards, whether the surety was aware of the security or not."

### "Possession"

Under 12A Okl.Stat. (1971) § 9–204:

"A security interest cannot attach until there is agreement [subsection (3) of Section 1-201] that it attach and value is given and the debtor has rights in the collateral. It attaches as soon as all the events in the preceding sentence have taken place unless explicit agreement postpones the time of attaching ..."

Furthermore, as to when possession can perfect a security interest without filing, 12A Okl.Stat. (1971) § 9–305 provides:

"A security interest in ... goods ... *may be perfected by the secured party's taking possession of the collateral. If such collateral other than goods covered by a negotiable document is held by a bailee, the secured party is deemed to have possession from the time the bailee receives notification of the secured party's interest.* A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this Article. The security interest may be otherwise perfected as provided in this Article before or after the period of possession by the secured party." (Emphasis added)

As to *who* must have possession, the court in *Appeal of Copeland*, 531 F.2d 1195, 1204 (CA 3 1976), observed:

"Where the Code requires perfection by possession of the secured party or his bailee, it is clear that *possession by the debtor or an individual closely associated with the debtor is not sufficient to alert prospective creditors of the possibility that the debtor's property is encumbered* ...." (authority cited) (Emphasis added)

The meaning of the word "possession" in this section is of special interest. The Court of Appeals in *Transport Equipment Co. v. Guaranty State Bank*, 518 F.2d 377, 381 (CA 10 1975), approved the following case language:

"... *The ostensible ownership exercised through possession is demonstrated*

*through simple physical control.* One who controls the collateral possesses it, and *leads others to believe it is his.*

\*     \*     \*     \*     \*     \*

Pre–code security law defined possession as meaning physical control.

\*     \*     \*     \*     \*     \*

Perhaps the secured party *must take possession* from the debtor, who has possession, in order to *demonstrate the ostensible ownership* which indicates the perfected security interest *to other potential creditors.* [*Automated Book–Binding Services v. Finance Co.,* (4th Cir. 1972)] ... 471 F.2d 546 at 551, 552, 553, 554.

"Pre–code law required as open and notorious a change of possession as the nature of the property permitted in order to give plain and public notice to other creditors or purchasers of the secured party's claim against the property.... (citing authorities) ... There is no indication that the pre–code definition of possession has been modified."

"We find appropriate the following rule cited with approval by the court in *In re Westbrook,* 228 F.Supp. 966 (E.D. Ark.1964), aff'd 337 F.2d 404 (CA 8 1964):

> The possession of the mortgagee in order to be sufficient notice to dispense with recording must be *unequivocal, absolute and notorious,* so that third parties may be advised...." (Emphasis added)

## CONCLUSION

■ A surety may enforce every remedy which the creditor has against the principal upon the surety's "satisfying the obligations of the principal." However, there is no indication herein that the intervener has so satisfied the principal's obligations on the note to the bank and the intervener cannot invoke Section 382, supra, to transfer the rights of the bank to himself.

■ Moreover, although a surety may benefit from every security held by the creditor for the performance of the principal obligation, this only entitled a surety to the benefit of securities "held by the credi-

tor." Since the bank holds an unperfected security interest in the motorboat, such is inferior to the Code trustee's lien creditor status. Read 11 U.S.C. § 544(a).

■ Significantly, although Oklahoma's Uniform Commercial Code allows a secured party to perfect his security interest by possession without the filing of a financing statement, the possession must be by the secured party himself or by a bailee with express notice of the security interest. Mere possession by the debtor or a person closely associated with him cannot perfect the secured party's interest. The intervener is both the debtor's father and co–debtor, and cannot qualify as an agent for the bank. See *Appeal of Copeland,* supra. Actually, the intervener gained "possession" of the boat merely by agreeing to provide a place to store the boat for the debtor's convenience and at the debtor's request. The debtor could have removed the boat at any time had he so wished. This was not the required "unequivocal, absolute and notorious" notice to others. *Transport Equipment Co. v. Guaranty State Bank,* supra. Addedly, Section 383, supra, may also require the surety to satisfy the principal's obligation before he is entitled to such benefit which is no aid to the intervener herein.

Lastly, there is no manner in which the intervener, apart from the bank's position, can be deemed to have perfected a security interest in his own right. Section 9–204 requires that there be an agreement that a security interest attach, and no such agreement between the debtor and the intervener is even intimated evidentially.

A judgment and an order directing the intervener to make such motorboat available to the trustee for the estate's general benefit accompanies this opinion.