**Ronald COOPER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–81–404.**

Court of Criminal Appeals of Oklahoma.

Nov. 8, 1983.

John W. Garland, Pain & Garland, Anadarko, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Ronald Cooper, was convicted by a Caddo County jury of First Degree Murder in connection with the slaying of Johnny Robert Colling, and was sentenced to life in prison. The victim disappeared on November 28, 1966. His dismembered corpse was recovered from the frozen waters of Cache Creek in Caddo County on December 24 and 25,

1966. The cause of death was four .22 caliber bullet wounds to the head. Dismemberment occurred sometime after death. Although questioned as part of the original investigation, appellant was not charged with the crime until January, of 1980. Finding no merit to any of appellant's eleven propositions of error, we affirm.

▰▰▰ Appellant's contention that the evidence was insufficient to establish venue in Caddo County is based on his own conflicting statements to different witnesses. His statements, coupled with other evidence in the case, suggest that the crime occurred in either Caddo or Comanche County. However, where uncertainty exists the accused may be tried in any county in which the evidence indicates that the crime might have been committed. Okla. Const. art. II, § 20; *Steele v. State,* 629 P.2d 1272 (Okl.Cr. 1981). The action was properly brought in Caddo County.

He next contends that the attorney of a prosecution witness was improperly allowed to invoke the attorney-client privilege at a pretrial hearing. He asserts that the privilege was unavailable under 12 O.S.1981, § 2502(D)(1).[1]

▰▰▰ This argument assumes that the client, who consulted the attorney in December of 1966, and January of 1967, did so for the purpose of enabling himself or another to commit a crime, or fraud. The only indication of such a purpose is appellant's allegation that the client committed perjury some thirteen years later. Whether the attorney-client privilege is involved in certain testimony is a question of fact for the trial court, whose findings on conflicting evidence are controlling on appeal. See, *Hurt v. State,* 303 P.2d 476 (Okl.Cr. 1956). We find no reason to disturb the ruling of the trial court.

▰▰▰ Appellant challenges the admission of an incriminating tape recording

made in December, of 1979. He argues that the recording was so inaudible as to preclude admission at trial. The admissibility of a tape recording that is challenged as inaudible is within the sound discretion of the trial court. *United States v. Carter,* 613 F.2d 256 (10th Cir.1979). Review of the tape reveals that the unintelligible portions are not so substantial as to render the recording as a whole untrustworthy, especially in view of the fact that the witnesses who heard the actual statements also testified at trial, and the recording gives independent support to their testimony. See, *United States v. Jones,* 540 F.2d 465 (10th Cir.1976) cert. den., 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551.

▰▰▰ He further argues that, since the recording was obtained by placing a transmitting device in the dining area of the residence he shared with the prosecution witnesses, either his personal consent or a search warrant was required. However, to the extent that the law of search and seizure is applicable, where two or more persons have equal rights to the use or occupancy of premises, any one of them is ordinarily capable of consenting to a search. *Stucker v. State,* 493 P.2d 84 (Okl.Cr.1972). Moreover, one who voluntarily enters into a conversation with another takes the risk that such person may memorize, record or even transmit the conversation. *Pearson v. State,* 556 P.2d 1025, 1033 (Okl.Cr.1976). See also *Thompson v. State,* 298 P.2d 464 (Okl.Cr.1956). Since the other residents consented, this argument is not well taken.

▰▰▰ It is urged that the recording contained evidence of other crimes. The prosecutor stated as much in open court. However, defense counsel insisted that all or none of the tape be admitted. Generally, a party may not complain of an error which he himself has invited, or which he has waived, either expressly or impliedly. *Luker v. State,* 504 P.2d 1238 (Okl.Cr.1972).

---

1. 12 O.S.1981, § 2502(D)(1) provides:
    D. There is no privilege under this rule:
    1. If the services of the attorney were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud;

Appellant finally argues that the tape was inadmissible because of his intoxication. However, intoxication short of rendering the accused unconscious of what he is saying goes to the weight and credibility of a statement, rather than its admissibility. See, *Parsons v. State,* 166 Ind.App. 152, 333 N.E.2d 871 (1975); and *State v. Saxon,* 261 S.C. 523, 201 S.E.2d 114 (1973). We find from the evidence, especially the tape itself, that the appellant's intoxication did not rise to such a level as to preclude admission of the tape. The trial court did not err in receiving the tape recording into evidence.

Appellant next complains of numerous instances of alleged prosecutorial misconduct. However, in several instances, appellant's objection was sustained, but he failed to request that the jury be admonished to disregard the statements. See, *Lancaster v. State,* 541 P.2d 1343 (Okl.Cr. 1975); and *Hux v. State,* 554 P.2d 82 (Okl. Cr.1976). In other instances, defense objections were sustained and the jury was admonished to disregard. None of these remarks were of such magnitude as to have determined the verdict, and any error was cured by the admonition. *Cooper v. State,* 661 P.2d 905 (Okl.Cr.1983).

Four instances of alleged improper closing argument involved either comment within the proper scope of closing argument, or remarks not of such character as to have affected appellant's rights. See, *Kennedy v. State,* 640 P.2d 971 (Okl.Cr. 1982). Finally, on one occasion the trial court permitted the prosecutor to ask leading questions of his own witness. The court in its discretion may permit leading questions by the State. *Cantrell v. State,* 462 P.2d 342 (Okl.Cr.1969); 12 O.S.1981, § 2611(D). The witness was the former mother-in-law of the appellant and the grandmother of his son, and had become somewhat evasive in her responses. We find no abuse of discretion.

Cooper contends that the trial court erred in refusing to permit a defense witness to testify that she overheard a conversation between Toddy Archilta and Tony Juarez indicating that Juarez killed the victim. The judge excluded this testimony on the ground of hearsay. 12 O.S.1981, §§ 2801(3) and 2802. Appellant insists that the testimony was admissible as an exception to the hearsay rule.

This contention is without merit. The only hearsay exception remotely covering this situation, 12 O.S.1981, § 2804(B)(3), pertaining to statements which tended to subject the declarant to criminal liability, is inapplicable since there was no showing that the declarant was unavailable at the time of trial. See, 12 O.S.1981, § 2804(A). In addition, the record reflects that Archilta, rather than Juarez, was the declarant, and the statement did not tend to subject Archilta to criminal liability.

Appellant's next contention is that the trial court erred in refusing to permit the defense to introduce a certified copy of an Information charging Thomas (Gabby) Narcomey with the same homicide. The proffered evidence included the State's motion to dismiss the charge, and the order of dismissal. The judge excluded the evidence on the ground that it "opens up a can of worms" by going into a situation not properly before the jury, to wit, the prosecutor's reasons for filing and dismissing the criminal charge.

Under 12 O.S.1981, § 2403, relevant evidence may be excluded if its probative value is substantially outweighed by inter alia, the danger of confusion of the issues and misleading the jury. Moreover, the admissibility of evidence at trial is within the trial court's discretion, and the court's ruling is not reversible where there is no showing of prejudice to the defendant or breach of his fundamental rights. *Glasgow v. State,* 572 P.2d 290 (Okl.Cr.1977). We find no abuse of discretion in this instance.

Appellant further contends that a prosecution witness was permitted to relate hearsay statements by appellant's brother, Robert Lynn Cooper, incriminating appellant in the crime. Appellant urges that his right to confront and cross-examine the brother

**1174** ■■■■■■■■■■■■■■■■■■■■■■■■■■■■

was violated. The statements were made in 1966 while Robert Cooper sat next to appellant on the front seat of a car. The record thus suggests that the statements by Robert Cooper were in the presence, and surely within the hearing, of the appellant. There is no indication that the appellant denied the statements at the time. In fact, after his brother spoke, the appellant then described how the men dismembered and disposed of the body.

■■■■■ A statement is not hearsay if it is offered against a party and is a statement of which he has manifested his adoption or belief in its truth. 12 O.S.1981, § 2801(4)(b)(2). See, *Ryan v. State,* 451 P.2d 383 (Okl.Cr.1969); and *United States v. Moore,* 522 F.2d 1068 (9th Cir.1975), cert. den., 423 U.S. 1049, 96 S.Ct. 775, 46 L.Ed.2d 637. Appellant's silence in the face of the accusatory statements of his brother, coupled with his own contribution to the disclosure of the story of the crime, constituted a clear adoption of the statements. Moreover,

> [n]either due process, fundamental fairness, nor any more explicit right contained in the Constitution is violated by the admission of the silence of a person, not in custody or under indictment in the face of accusations of criminal behavior.

*United States v. Giese,* 597 F.2d 1170, 1197 (9th Cir.1979) cert. den., 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (admission of such evidence upheld against a claimed violation of the right against self-incrimination). Appellant's contention is not well taken.

■■■■■ It is contended that the trial court erred in receiving into evidence black and white photographs of the dismembered corpse. We upheld the use of the identical photographs against appellant's brother. See, *Cooper v. State,* 661 P.2d 905 (Okl.Cr. 1983). In cases where the photographs in question depict a gruesome scene, the trial court must consider whether the probative value of the particular photograph outweighs the prejudice potentially accompanying its admission, and this Court will not interfere with the ruling unless it appears that the trial court abused its discretion.

*Id.,* at 907. As in *Cooper,* these photographs were admissible as showing the suppression or destruction of evidence, see generally, *Wills v. State,* 636 P.2d 372 (Okl.Cr. 1981), as confirming partially the confessions testified to by various prosecution witnesses, and as illustrating and corroborating oral testimony in the case. Moreover, the State charged that the homicide was committed on or about the 28th day of November, 1966, but its medical experts were unable to determine the time of death. The photographs reflected the condition of the body, and thus were relevant and material to the determination of an approximate time of death. See, *Asberry v. State,* 564 P.2d 648 (Okl.Cr.1977).

■■■■■ Appellant next contends that the trial court erred in overruling its demurrer to the State's evidence, more properly denominated motion for directed verdict. He urges that the evidence, aside from his tape-recorded statements, was insufficient to show that he committed the homicide, and thus did not establish the corpus delicti. However, appellant waived his right to complain of the ruling on the demurrer by proceeding with his case-in-chief after the ruling. See, *Helfrich v. State,* 640 P.2d 1367 (Okl.Cr.1982). Moreover,

> [t]his contention misconstrues the definition of corpus delecti (sic) and the extent of the proof the State introduced to connect the appellant to the crime. The "corpus delecti" (sic) means the actual commission of a particular crime by someone. The corpus delecti (sic) may be established without showing that the offense charged was committed by the accused. (Citations omitted.)

*Parks v. State,* 651 P.2d 686, 690 (Okl.Cr. 1982). This contention is without merit.

■■■■■ He also contends that the trial court erred in denying his motion for new trial. This contention erroneously assumes the merit of the allegations of error now asserted on appeal. A motion for new trial is addressed to the discretion of the court, so long as that discretion is not abused, the trial court's decision will not be overruled

by this Court. *Lemmon v. State,* 538 P.2d 596 (Okl.Cr.1975). We find no abuse of discretion.

■ Appellant's final contention is that he was denied his Sixth and Fourteenth Amendment right to a speedy trial. Analysis of this issue depends upon the balancing of four factors: the length of delay, the reason for delay, defendant's assertion of his right, and the resulting prejudice to the defendant. See, *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *Bauhaus v. State,* 532 P.2d 434 (Okl.Cr. 1975).

The crime was alleged to occur on or about November 28, 1966. Appellant was charged with the crime on January 16, 1980. Trial was set for June 9, 1980, but continued at the request of the defense until December, 1980.

■ Since the speedy trial clause does not apply prior to the time that the defendant becomes an 'accused', see, *Bauhaus,* supra; and, *United States v. Marion,* 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971), the thirteen years from the time of the crime until the filing of the charges must be excluded. Moreover, the delay after the defense continuance must also be disregarded, leaving only some five months of delay chargeable to the state. There is no indication that the defendant at any time urged his right to a speedy trial. The only hint of prejudice is the death of a witness. However, the record does not reflect whether death occurred before or after the continuance was granted the defense. We find that appellant was not denied his right to a speedy trial.

■ In contrast to the speedy trial clause, the due process clause may under some circumstances require dismissal of charges due to pre-accusation delay. See, *United States v. Marion,* supra. However, the record reflects that crucial evidence—the incriminating statements of the appellant—did not come to the attention of the authorities until 1979 and 1980. It thus appears that the long delay in filing charges against the appellant was based on the need for proof of his guilt. To prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time. See, *United States v. Lovasco,* 431 U.S. 783, 796, 97 S.Ct. 2044, 2052, 52 L.Ed.2d 752 (1977). We find that the pre-accusation delay did not deny appellant due process of law.

The judgment and sentence is affirmed.

BRETT, J., concurs.

BUSSEY, P.J., concurs in results.