MADILL BANK AND TRUST
COMPANY, Appellee,

v.

George HERRMANN & Buel
Lasley, Appellants.

Nos. 62461, 62264.

Court of Appeals of Oklahoma,
Division No. 3.

Feb. 3, 1987.

Rehearing Denied March 24, 1987.

As Corrected May 14, 1987.

Certiorari Denied June 2, 1987.

568

Drew Neville, Von Russell Creel, William J. Skepnek and Rhonda Murphy Reynolds, Linn & Helms, Oklahoma City, for appellants.

Brooke S. Murphy and Harry Woods, Jr., Crowe & Dunlevy, Oklahoma City, for appellee.

BAILEY, Judge:

Appellants bring this appeal from a jury verdict awarding Appellee recovery on a promissory note. Appellee Madill Bank and Trust filed suit against Appellants George Herrmann and Buel Lasley to recover on a promissory note, alleging that Appellants were co-makers on the note. Appellants interposed general denials, and in defense asserted that they had been induced to sign the note by the fraud of Appellee Bank and its officers, that their signatures had been obtained on the note by virtue of misrepresentations and/or mutual mistakes of material facts, and that the Appellee Bank had allowed the collat-

eral to become impaired, thereby discharging Appellants from liability. Based on these same allegations, Appellants counter-claimed for rescission of their contractual liability and for actual and punitive damages.

Evidence adduced during the eight-day trial revealed that Appellants signed a promissory note, held by Appellee Bank, on behalf of Denny McCoy. McCoy was engaged in the cattle business, buying cattle and paying for the cattle with checks drawn on Appellee Bank. McCoy and Heinold Hog Markets had reached an agreement by which McCoy would draw money from the account with which to pay for cattle purchases and Heinold would deposit sufficient funds to cover the draws; McCoy was to pay back the money drawn from proceeds derived from sales of the cattle purchased. Subsequently, Heinold learned that McCoy was using funds from the account to finance McCoy's ranching operation and demanded repayment of the funds withdrawn by McCoy, approximately $3.8 million. Heinold additionally refused to honor an additional $800,000.00 in checks drawn by McCoy, leaving McCoy in need of almost $4.8 million to meet his obligations.

In order to meet this demand, McCoy sought the assistance of Appellee Bank. Appellee Bank, with the participation of Liberty National Bank in Oklahoma City arranged financing of approximately $3.4 million for McCoy. As part and parcel of the financing agreement, Appellants were required to sign the promissory note as additional parties. Appellants acknowledged their individual liability on the note by a separate letter which was explained and/or read to Appellants before and at the time of execution of the loan documents.

At trial, Appellants attempted to show that Appellee Bank, through its officers, misrepresented and/or was mistaken as to the extent and nature of Apellants' liability as co-makers on the note, rather than that of guarantors as asserted by Appellants. Appellants also attempted to show that Appellee Bank allowed the collateral to be sold without application of the proceeds to the indebtedness, thereby impairing the col-

lateral and discharging Appellants from liability. Appellants also sought to introduce evidence of lending limit violations by the Appellee and evidence of threats of suit by Heinold against Appellee in support of their theory of fraud, which evidence was denied admission by the Trial Court.

After the presentation of evidence, both parties demurred to the evidence and requested directed verdicts in their favor. The Trial Court sustained Appellee's demurrer and directed verdict for Appellee on the issues of misrepresentation, mutual mistake and impairment of collateral. The fraud issue as a defense and as a counterclaim was submitted to the jury by proper instruction. The jury returned a verdict for Appellee on the note, and, after further instruction, awarded recovery of $1,942,641.68, the amount of principal due on the note at the time of trial. The Trial Court subsequently entertained Appellee's motions for determination of interest due, and for Appellee's attorneys' fees and costs. The Trial Court awarded Appellees $1,028,794.24 as interest due at the time of trial, $400,000.00 in attorneys' fees (a sum alleged by Appellees to be well less than the 15% provided for in the note) and $65,650.57 in costs.

Appellants assert as their first proposition of error the error of the Trial Court in overruling Appellants' Motion to Join Additional Parties, by which Appellants sought to join the other signatories and obligors on the note as parties defendant. However, and under the law in effect at the time, we find the Appellants failed to timely raise the issue of defect of parties, thus having waived the objection, and affirm the Trial Court's ruling.

■ It is clear that 12 O.S.1981 § 236 (repealed 1984) required the joinder of those parties who are "necessary" for a complete determination of the controversy. It is also clear that a defect of parties must be raised in a timely manner by motion or by answer, or else the objection to the alleged defect in parties is waived. 12 O.S. 1981 § 236 (repealed 1984); 12 O.S.1981 § 268A (repealed 1984); 12 O.S.1981 § 269 (repealed 1984); *Wiggins v. Sterne*, 293 P.2d 603 (Okl.1956). As Appellants did not raise the issue of defect of parties by motion until some eight or nine months after the filing of their answer and the case was at issue, we find that the Appellants did not raise the issue of defect of parties in a timely manner, and that they effectively waived this objection.

■ Further, the facts of this case show unquestionably that Appellants signed the note in question as an accommodation to their acquaintance and business associate, McCoy, acknowledging their individual liability on the note by separate letter. The authority is ample to support Appellants' liability to Appellee as accommodation makers. 12A O.S.1981 § 3–415; *In re Hill*, 7 B.R. 433 (Bkrt.WD Okl.1980); White & Summers, Uniform Commercial Code, § 13–12; pp. 512–513. As Appellants signed understanding their individual liability on the note, they are also liable as makers. *Vinick v. Fourth National Bank of Tulsa*, 531 P.2d 327 (Okl.1974); *Beneficial Finance Co. of Norman v. Marshall*, 551 P.2d 315 (Okl.App.1976). Under the law in effect at the time, joint obligors could be sued separately or together as the Plaintiff might choose. 12 O.S.1981 § 234 (repealed 1984); *Janeway v. Vandeventer*, 172 Okl. 379, 45 P.2d 79 (1935). The other obligors, therefore, were not necessary parties in the Appellee's suit against Appellants, and Appellants' Motion to Join the other signatories and obligors was properly overruled on this ground also.

In their second proposition of error, the Appellants assert the error of the Trial Court in excluding certain evidence of lending limit violations of the Appellee Bank in its loans to McCoy, which evidence included an FDIC report in that regard. Appellants also complain of the exclusion of the deposition of an agent of Heinold showing threats of suit levelled at Appellee Bank arising from the McCoy transactions. Appellants further assert the error of the Trial Court in denying admission of a promissory note allegedly executed some days in advance of the note sued upon, which note purported to show the status of Appellants as guarantors, rather than co-makers.

Appellants attempted to introduce evidence of violations by Appellee Bank of state and federal law imposing individual liability on bank officers for loans in excess of lending limits, which evidence included an FDIC report of an investigation of Appellee Bank in that regard. Appellants assert that the exclusion of this evidence prevented them from proving their defense and counter-claim of fraud by preventing Appellants from establishing the bias of Appellee Bank's president and impeaching his credibility.

■■■ A party seeking to establish fraud must prove each of the elements thereof by clear, convincing and satisfactory evidence. *Barriner v. Stedman*, 580 P.2d 514 (Okl.1978). In that regard, the law presumes honesty and fair dealing, and fraud may not be inferred from acts which are consistent with honesty of purpose. *Knudson v. Weeks*, 394 F.Supp. 963 (WD Okl.1975); *Houston Oilers, Inc. v. Neely*, 361 F.2d 36 (10th Cir.1966), cert. den. 385 U.S. 840, 87 S.Ct. 92, 17 L.Ed.2d 74; *Mohoma Oil Co. v. Ambassador Oil Corp.*, 474 P.2d 950 (Okl.1970). With these rules in mind, we turn our attention to the rules as to the admissibility of evidence to determine if the evidence sought to be introduced was properly excluded.

Otherwise relevant evidence may be excluded if the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, delay or needless presentation of cumulative evidence. 12 O.S.1981 § 2403. Rulings of the Trial Court on the admissibility of evidence will not be disturbed in the absence of a strong showing of prejudice to the proponent, or a breach of his fundamental rights. *Cooper v. State*, 671 P.2d 1168 (Okl.Cr.1983); *Samara v. State*, 398 P.2d 89 (Okl.1964), cert. den. and appeal dismissed, 381 U.S. 354, 85 S.Ct. 1556, 14 L.Ed.2d 681 (1965).

■■ Under these rules, then, we find the exclusion of the proferred evidence of lending limit violations and alleged personal bias of Appellee Bank's president to be a proper exercise of the Trial Court's discretion, of which we find no abuse. *See, Cooper*, supra; *Missouri-Kansas-Texas R. Co. v. Harper*, 468 P.2d 1014 (Okl.1970). In the case of the lending limit violations, the offered evidence was also cumulative, as the personal liability of the Appellee Bank's president for over-limit loans was well developed in the president's own testimony. As to the FDIC report, we feel the FDIC reports may constitute inadmissible hearsay, as investigative reports which could lead to enforcement proceedings. *See*, 12 O.S.1981 § 2803(8)(a) & (d); *see also* Read, *Oklahoma Evidence Handbook*, (1971 Ed.), at page 220. However, the jury could very well have been mislead and confused by the inference of wrongdoing contained in the report, and we find the danger of confusion and prejudice outweighs any probative value of that evidence. *See*, 12 O.S. 2403, supra. A finding of violation of law by the FDIC examiners would be highly prejudicial whether related to an issue of the case or not, or whether, ultimately, the examiners were correct in that determination of violation of law. At best, the evidence offered raises only a suspicion of ill intent, which is clearly insufficient to establish a claim of fraud. *Knudson*, supra; *Houston Oilers*, supra; *Mohoma Oil*, supra. For these reasons, we find that the Trial Court properly exercised its discretion in excluding the cumulative, prejudicial, confusing and potentially misleading evidence. *Cooper*, supra; *Harper*, supra.

Appellants further argue the error of the Trial Court in excluding a note allegedly signed some days prior to the note upon which suit was brought. They maintain that the prior note established their status as guarantors, rather than co-makers. Appellants also assert the Trial Court erroneously excluded the deposition of witness Bickner, an agent of Heinold, which deposition showed threats of suit lodged by Heinold against Appellee Bank over the McCoy transactions.

■■ However, the significance of the excluded evidence escapes this Court. The offered note, in our opinion, does not alter the Appellants' ultimate liability on the note, and hence was merely cumulative evi-

dence of Appellants' liability thereon. Similarly, the deposition of Bickner was also cumulative to the already elicited testimony of the Bank's president, who testified that the Bank had, in fact, been threatened with suit over the McCoy transactions. Under the authority contained above, we find the exclusion of the questioned evidence to be a proper exercise of the Trial Court's discretion.

Appellants next argue the alleged error of the Trial Court in sustaining Appellee's demurrer to Appellants' evidence in defense of mutual mistake, innocent misrepresentation, and impairment of collateral. Appellants also assert the error of the Trial Court in overruling the Appellants' Motions for directed verdict on those issues.

■ The standards for review of the Trial Court's rulings on demurrers to the evidence and motions for directed verdicts are well established and are substantially the same. When the Trial Court considers a demurrer to the evidence or a motion for directed verdict, it must consider as true all evidence and all reasonable inferences favorable to the party opposing the demurrer or motion, and disregard any conflicting evidence favorable to the demurrant or movant. *Messler v. Simmons Gun Specialties, Inc.*, 687 P.2d 121 (Okl.1984). The demurrer should be overruled UNLESS there is an absence of evidence or proof which shows a right to recover on the part of the party opposing the demurrer or motion. *Messler*, supra, 687 P.2d 121, 130, at footnote 19. With this standard in mind, we thus turn our attention to the substantive law regarding Appellants' contentions.

■ As to Appellants' defense of impairment of collateral, the secured party's "unreasonable impairment" of the collateral securing a note will discharge any parties to the underlying instrument from liability. 12A O.S.1981 § 3–606(1)(b); *see also, Beneficial Finance of Norman v. Marshall*, 551 P.2d 315 (Okl.App.1976). It is the CREDITOR'S acts which will be scrutinized, and the creditor must act with reasonable care with regard to preservation of collateral in his possession. 12A O.S.1981 § 3–606, comment 5; 12A O.S.

1981 § 9–207; *Beneficial Finance*, supra, 551 P.2d 315, 318. In the case before us, however, it was the debtor, McCoy, who was in possession of the collateral, and it was he, outside the control of Appellee Bank and without the express authority of the Appellee, that sold part of the collateral without applying the proceeds to the outstanding indebtedness. Further, all of the parties to the transaction anticipated and consented in advance to the sale of the McCoy's assets, the collateral, to fulfill the loan obligation. As McCoy was outside the control of the Appellee Bank, and it was he that "impaired" the value of the collateral by selling part of it without applying the proceeds as agreed, we see no evidence that the Appellee in any way impaired the collateral, and thus, the Trial Court's rulings on the demurrer and motion for directed verdict were correct. *Messler*, supra.

Appellants also assert the error of the Trial Court in sustaining Appellee's demurrer to Appellants' evidence of mutual mistake as to the number of cattle securing the McCoy note. Appellants argue that as the parties were mutually mistaken as to the actual number of cattle available to secure the note, they are entitled to rescission, and that therefore the Trial Court erred in overruling their Motion for Directed Verdict on that issue.

■ In order to entitle a party to rescission based on mutual mistake, there must be such a mistake as to a material part of the agreement so as to prevent a meeting of the minds upon that issue. 15 O.S.1981 § 62–64; *Watkins v. Grady County Soil & Water Conservation Dist.*, 438 P.2d 491 (Okl.1968). We find no such essential mistake here; as far as Appellants are concerned, the essence of the contract between Appellants and Appellee was the loan of money to McCoy, and the consequent repayment of the loan by Appellants in the event of default by McCoy. We find no evidence of mistake so as to justify a directed verdict on the issue, and affirm the Trial Court's ruling sustaining Appellee's demurrer to the Appellants' evidence of mistake.

The Appellants also argue the error of the Trial Court in sustaining Appellee's demurrer to Appellants' evidence of innocent misrepresentation and commensurate error in overruling Appellants' Motion for Directed Verdict on that issue. Appellants assert that the Appellee Bank president's misrepresentations of the number of cattle available to secure the McCoy note entitled them to damages in the amount of interest monies paid by Appellants to Appellee on behalf of McCoy.

In our opinion, Appellants' claim for damages arising from the alleged misrepresentation is more properly characterized as an action in equity for restitution of monies paid. In equitable actions, the presumption exists that the Trial Court's findings are correct, and the Trial Court's ruling on a demurrer to the evidence will not be disturbed unless clearly against the weight of the evidence. *Snow v. Winn*, 607 P.2d 678 (Okl.1980) (rescission of commercial lease). The Court is not required to ignore contrary evidence, but may weigh the evidence to determine for whom the evidence preponderates. Id., at footnote 3. In that light, we find that the evidence on the issue of innocent misrepresentation is minimal, and the ruling of the Trial Court is consistent with the evidence of Appellants' independent knowledge of and acquaintance with McCoy and his operation. The Trial Court's rulings on Appellee's demurrer and on Appellants' motion for directed verdict are therefore affirmed.

At the close of evidence, and after the Trial Court ruled on the parties' motions, the jury retired to deliberate. After deliberations, the jury returned a verdict for Appellee without determining the amount of liability. The Trial Court reinstructed the jury, after which the jury returned a verdict apportioning one-half of the prayer against each of the Appellants. The Trial Court again instructed the jury as to the issue of joint and several liability of the Appellants, after which the jury returned a verdict of $1,941,641.68 jointly and severally against the Appellants. From this procedure, Appellants assert the reversible error of the instructions, alleging that such a

verdict would not have been returned but for the improper intervention of the Trial Court. We disagree with this proposition of the Appellants and find no reversible error occurred.

Initially, Appellants correctly set out the rule with regard to the test for reversible error in instructing the jury, in that there must be a determination that the jurors were so mislead as to reach a different result, or there was excluded from consideration a proper issue of the case. *Van-Wart v. Cook*, 557 P.2d 1161 (Okl.App. 1976). The Trial Court has the duty to reinstruct by supplemental instructions if necessary. *Britton v. Groom*, 373 P.2d 1012 (Okl.1962); *West v. Abney*, 203 Okl. 227, 219 P.2d 624 (1950). The Trial Court must ensure that no substantive rights are compromised and that justice so demands. *Lowe v. First Nat'l. Bank*, 143 Okl. 134, 288 P. 283 (1930).

Under these rules, and after a review of the instructions and record, we find that no prejudicial or reversible error took place with regard to the instruction of the jury. The only evidence of the dollar amount of the indebtedness was introduced early in the eight day trial, which involved voluminous exhibits and numerous witnesses. The joint and several liability was established in the loan documents, and the Trial Court in that regard did not influence the verdict by its instructions, as the jury had already determined liability as to the Appellants, and all that remained was determination of amount. As the only evidence of the amount of liability that had been introduced was the amount due and owing on the note, and no other evidence was adduced by either party reflecting an amount less than that prayed for, we find no error in the instructions given.

The Appellants also assert the error of the Trial Court in awarding Appellee its costs and attorneys fees in prosecution of this action. In that regard it is clear that attorneys' fees may not be awarded unless provided for by contract or statute.

*Oklahoma Publishing Co. v. Miskovsky,* 654 P.2d 596 (Okl.1982); *Sisney v. Smalley,* 690 P.2d 1048 (Okl.1984). In the case before us, the contract provided for a 15% attorneys fee for collection in the event of default, as well as providing for the payment of costs incurred in collection. Additionally, 12 O.S.1981 § 936 provides for an award of attorneys fee to the successful party in suits for collection of notes. Thus, the Trial Court had before it ample authority for the award of attorneys fees and costs to Appellees.

■ Additionally, and although the better procedure is to make specific findings of fact as to amounts and reasonableness of an attorneys fee [*see,* i.e. *State ex rel. Burk v. Oklahoma City,* 598 P.2d 659 (Okl. 1979)], it is apparent from the record that both parties submitted briefs on the issue to the Trial Court, and on which the Trial Court had a hearing at which evidence on the issue of fees and costs was taken. No record of that hearing was included in the record on appeal. In that regard, the Court on review will presume that the Trial Court's award in that regard is correct. *Mitchell v. Kimbrough,* 491 P.2d 289 (Okl. 1971). The award of attorney fees is particularly within the sound discretion of the Trial Court, and the Trial Court's ruling with regard thereto will not be disturbed absent a showing of abuse. *State ex rel. Burk,* supra; *Security Nat'l. Bank of Enid v. Bonnett,* 623 P.2d 1061 (Okl.App. 1980). As there is no record of the hearing on the attorney fee and costs issue, we will affirm the rulings of the Trial Court as presumptively correct in the absence of record to the contrary. *Mitchell,* supra.

Appellants assert the error of the Trial Court in failing to excuse for cause certain of the jurors empaneled to hear the case at issue, arguing that those jurors, as Appellee Bank customers, were less than impartial. Although the Trial Court excused all potential juror/depositors of Appellee Bank with deposits of over $100,000.00, the Trial Court refused to excuse other lesser depositors from jury duty.

■ The Trial Court is vested with great discretion in excusing jurors for cause, and the Trial Court's rulings with regard thereto will not be reversed absent a showing of abuse of that discretion. 12 O.S.1981 § 572; *McAlester Urban Authority v. Lorince,* 519 P.2d 1346 (Okl.1973); *Rice v. Emerson,* 181 Okl. 51, 72 P.2d 498 (1937). Further, and at least in criminal prosecutions, a bank customer of a robbed bank is not per se disqualified from service, and may only be excused for cause. *Johnson v. State,* 56 Okl.Cr. 73, 33 P.2d 812 (1934). We see no reason to follow a contrary rule in civil cases, and find no showing of prejudice or abuse of discretion from the presence of Bank customers on the jury panel. As all the jurors swore to their ability to impartially weigh the evidence presented to them, we find this allegation of error without merit.

■ The Appellants lastly argue the error of the Trial Court in denying Appellants' Motion to Stay the current case pending resolution of a federal court case involving other parties to the note in question filed in the Eastern District of Oklahoma. However, the decision to stay an action pending resolution of another suit is also a matter to be decided in the exercise of the Trial Court's sound discretion. *Lutes v. United States District Court for the Western District of Oklahoma,* 306 F.2d 948 (10th Cir.1962), cert. den. 371 U.S. 941, 83 S.Ct. 320, 9 L.Ed.2d 275 (1962). In the absence of a showing of an abuse of discretion, the Trial Court's ruling will remain undisturbed. Finding no abuse of discretion in the case before us, we affirm the ruling of the Trial Court.

This Court also has before it motions to stay execution filed by Appellants and to expedite this appeal and to seal exhibits filed by Appellee while this case has been before this Court on review. We overrule those motions as the issuance of this decision renders those requests moot.

Finally, Appellee requests judgment in the supersedeas bond posted by Appellants in this case. The Supreme Court Rule 31,

12 O.S.1981, ch. 15, App. 1, allows such action, and we see no reason that judgment on the supersedeas bond should not issue in this case, as we affirm the jury verdict for Appellee in the sum of $1,941,641.68, the amount of principal due and owing at the time of trial, plus interest accruing thereon as determined by the Trial Court. Appellee is granted judgment on the supersedeas bond posted by Appellants and we remand the case to the Trial Court for a determination of costs and interest accrued on appeal, and for such further action not inconsistent with this opinion.

AFFIRMED.

HANSEN, P.J., and HUNTER, J., concur.