**Jack Glendale LYNCH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–92–505.**

Court of Criminal Appeals of Oklahoma.

Nov. 3, 1995.

Rehearing Denied Feb. 8, 1996.

Sid Conway, Paula Alfred, Public Defenders Office, Tulsa, for Appellant at trial.

Tom Gilbert, Danny Williams, District Attorneys Office, Tulsa, for the State at trial.

Barry L. Derryberry, Assistant Public Defender, Tulsa, for Appellant on appeal.

Susan Brimer Loving, Attorney General of Oklahoma, G. Lynn Burch, III, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

## OPINION

LANE, Judge:

Appellant, Jack Glendale Lynch, was convicted of Count I, First Degree Murder, Count II, Assault and Battery with a Dangerous Weapon, Count III, First Degree Rape, Count IV, Forcible Oral Sodomy, and Count V, Forcible Anal Sodomy, following a jury trial in the District Court of Tulsa County Case Number CF–90–3025, before the Honorable Joe Jennings. The State filed a Bill of Particulars as to the Murder charge, but after returning a verdict of guilty, the jury recommended that Appellant be sentenced to Life Without Parole as to Count I, First Degree Murder and five hundred (500) years on each of the remaining counts. Appellant was sentenced according to the jury's recommendation.

Appellant now challenges his convictions and sentences, raising seven allegations of error. We do not find that any error has occurred which requires relief from this Court. The judgment and sentence of the trial court is **AFFIRMED.**

The evidence at trial indicated that late on the evening of July 13, 1990, Appellant purposely struck the victim with his Jeep, got out of the vehicle and placed her inside. Appellant left the scene with the victim and she was last seen alive in his presence. She

was found several hours later near the Arkansas River, fatally wounded, raped and orally and anally sodomized.

As his first proposition of error, Appellant alleges his pretrial competency proceedings were invalid because of failure to serve the appropriate parties pursuant to statute. On August 2, 1990, Appellant petitioned the Court for a Determination of Competency. On September 20, 1990, Appellant was found incompetent to stand trial at that time, but was determined to be able to obtain competency within a reasonable period of time. Appellant was ordered to undergo treatment and on January 9, 1991, the competency hearing was continued. Dr. Paul R. Lanier from Eastern State Hospital was called to testify and Appellant was determined restored to competency at that hearing. Appellant does not complain that the determination was erroneous, merely that the proper procedure was not used in making that determination. He claims that the appropriate parties were not notified, thereby invalidating the entire proceeding.

Appellant's claim is without merit. We note initially that there is no transcribed record of any of the hearings, limiting this court's review to the record available. Appellant who petitioned the Court for a competency determination, now claims that someone other than himself—either the state, the district attorney, or the court—was responsible for complying with the notice provision in 22 O.S.Supp.1983, § 1175.2(B). We find no such requirement in the statute. Section 1175.2(A) provides that the question of incompetency of a person may be raised by "... the person, the defense attorney, or the district attorney, by an application for determination of competency.... The court, at any time, may initiate a competency determination on its own motion, without an application, if the court has a doubt as to the competency of the person...." The provision, cited by Appellant, in pertinent part reads:

B. A copy of the application for determination of competency and a notice, ... shall be served personally at least one (1) day before the first hearing on the application for a competency determination....

6. ... The person making such service shall make affidavit of the same and file such notice, with proof of service, with the district court.

Appellant now suggests the lack of notice means his determination of competency was not lawful, therefore the criminal prosecution could not proceed.

Were we to accept Appellant's selective reading of the statute, the courts would be flooded with defendants challenging their competency and then failing to follow the statutory requirements necessary to complete the procedure. As we stated in *Virgin v. State,* 792 P.2d 1186, 1188 (Okl.Cr.1990)

It is a well established rule of statutory construction that statutes are to be construed according to the plain and ordinary meaning of their language. 25 O.S.1981, § 1.

■ Our interpretation of the service of notice provision requires the party requesting the competency determination to provide the requisite notice and return of service, hence the use of the term "person" when referring to the party making service, and not the term "court", "state", "district attorney" or "defendant". Absent statutory requirements to the contrary, it is incumbent upon the party requesting a determination of competency to cause service of notice to issue to the appropriate parties and to file the proper proof of service with the district court. 22 O.S.Supp.1983, § 1175.2(B). We find no requirement in the statute for the state to serve notice on the necessary parties to a competency hearing when the request for such a hearing is made by the defendant. Since Appellant filed the petition requesting a competency determination, he cannot now complain of lack of notice. We will not allow Appellant to invite error and then complain of the same. *Wolverton v. State,* 707 P.2d 46, 47 (Okl.Cr.1985); *Cooper v. State,* 671 P.2d 1168, 1172 (Okl.Cr.1983); *Fox v. State,* 524 P.2d 60, 63 (Okl.Cr.1974).

■ At Proposition II, Appellant claims the state improperly appealed the magistrate's adverse ruling and prevailed. The original information filed charged Appellant with First Degree Murder, and was signed

and verified by the district attorney. At the preliminary hearing the Court granted the State's motion to amend the information adding the additional felonies of assault and battery with a dangerous weapon (the Jeep), rape, oral sodomy and anal sodomy. However, the Court refused to bind Appellant over on the charges of rape, oral sodomy or anal sodomy finding insufficient evidence to establish probable cause. The State appealed the magistrate's ruling to the district court which found sufficient evidence to bind Appellant over on the additional charges, and reversed the magistrate's ruling.

Appellant alleges the State had no grounds upon which to appeal the ruling since he was bound over on the murder complaint (and the State was not challenging the bind over order as to the murder) and because he was bound over on murder and assault charges he was not "discharged" within the meaning of the 22 O.S.Supp.1989, § 1089.1. Appellant's references here are to the sections of the statute which allow the State to "appeal an adverse ruling or order of a magistrate ... binding the defendant over for trial on a charge other than the charge for the original offense ..." and to "appeal an adverse ruling or order of a magistrate ... discharging a defendant at the preliminary examination because of insufficiency of the evidence ..."

Appellant's selective reading and convoluted interpretation of the statute does not provide him with the relief requested. He conveniently omits the portion of Section 1089.1 which allows the state to appeal a magistrate's ruling sustaining a demurrer to the information. Even a cursory reading of the record reveals that is exactly what happened here. After allowing the state to amend the information the magistrate granted Appellant's demurrer as to the rape and sodomy charges. With respect to Appellant's second argument, the fact that Appellant was bound over on the murder and assault charges does not mean that he was not discharged with respect to the remaining charges. Appellant is entitled to no relief.

Appellant next claims at Proposition III the State's failure to verify the amended information (filed after the preliminary hearing), and its second page, requires dismissal of all but the original murder charge. He claims the failure to verify the amended information and the second page of the information is a jurisdictional defect which can be raised for the first time on appeal, requiring reversal of all but the murder conviction, and requiring resentencing on all charges. Appellant readily admits these errors were not preserved at trial for appeal, but contends the jurisdictional defect can be raised for the first time on appeal.

The district attorney is required to subscribe his name to the Information, which must then be verified by the oath of the prosecuting attorney, complainant or some other person. 22 O.S.1981, § 303. The verification guarantees the accuracy of the factual allegations while the district attorney's signature insures the prosecution is being conducted in good faith by the State and that it is not the work of private citizens. See *Buis v. State*, 792 P.2d 427, 430 (Okl.Cr. 1990). Verification and endorsement of the original information are all that is necessary to confer jurisdiction on the trial court. Once jurisdiction is attained the court may proceed with the case to its proper conclusion.

With respect to the second page of the information, Appellant's allegation that Section 303 requires that the second page of an information be "verified" is incorrect. There is no such requirement. Appellant's mistake is in using the terms "verification" and "endorsement" interchangeably. Verification and endorsement constitute two different things which are distinguishable in purpose. As specified in Section 303(A), "All informations shall be verified by the oath of the prosecuting attorney, complainant or some other person". As this Court noted in *Buis*, 792 P.2d at 431, the mandatory language of Section 303 requiring endorsement by the district attorney or assistant district attorney and verification of the information, by the oath of the prosecuting attorney, complainant or some other person, is necessary to confer subject matter jurisdiction upon the district court, empowering it to act. Verification guarantees the accuracy of the factual allegations, giving authenticity to the facts alleged. The district attorney's endorse-

ment, otherwise known as a *signature,* insures the prosecution is being conducted in good faith by the duly authorized prosecutor, and is not the work of private citizens. *Buis,* 792 P.2d at 431; *Funkhouser v. State,* 734 P.2d 815, 819 (Okl.Cr.1987), *cert. denied,* 484 U.S. 942, 108 S.Ct. 326, 98 L.Ed.2d 354 (1987).

This Court in *Funkhouser* tacitly distinguished "verification" and "endorsement". An "endorsement", as the term is used here, is a signature, and requires none of the oath-making present in verification. The two are quite different and only an endorsement is required on the second page of the information. *Id.*

In *Harris v. State,* 369 P.2d 187 (Okl.Cr. 1962), we specified and adopted the procedure for bifurcating the information as we presently know it, finding it prejudicial to the defendant to allow reading of prior convictions, used for enhancement purposes, in conjunction with the charging information, before the defendant was even tried for the crime at issue. In developing that procedure, this Court went back to an 1837 English statute which specified that the information should be divided into two parts, the first setting forth the charge, and the second, *signed by the prosecuting officer,* setting forth the former convictions. *Harris,* 369 P.2d at 194. There is no statutory or case law requirement that the second page of the information be verified. The second page requires only the district attorney's or assistant district attorney's endorsement, otherwise known as a signature.

■ While verification is necessary to confer subject matter jurisdiction upon the court with respect to the crime charged, it is *not* necessary for sentence enhancement. As we stated in *Harris,*

> The habitual criminal statute does not create a new or independent crime, but describes circumstances wherein one found

guilty of a specific crime may be more severely penalized because of his previous conviction, as alleged and found; "habitual criminality" being a state rather than a crime. *Harris,* 369 P.2d at 192.

*Id.* at 192, citing *Salisbury v. State,* 156 P.2d 149 (Okl.Cr.1945). The enhancement statute addresses the punishment phase of a trial. Subject matter jurisdiction is conferred with the charging of the crime at issue; enhancement with prior conviction(s) contained on the second page of the information requires no independent subject matter jurisdiction as it is not a crime. As such, a simple endorsement/signature, indicating that the second page is filed by the duly authorized prosecutor is sufficient. The second page of the information was signed/endorsed by the prosecuting attorney. There is no error here.

Appellant claims at Proposition IV that evidence obtained pursuant to a search warrant was inadmissible under the Fourth Amendment due to his extended detention without a judicial determination of probable cause, citing as authority *County of Riverside v. McLaughlin,* 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). Appellant alleges it was error for his preliminary hearing to be held more than forty eight (48) hours after his initial detention since he was arrested without a warrant.

■ We do not reach the issue of Appellant's alleged illegal detention as we find the evidence in question was legally obtained pursuant to a search warrant.[1] The standard for review for the validity of a search warrant is the totality of circumstances. *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *accord Langham v. State,* 787 P.2d 1279 (Okl.Cr.1990). Under the totality of the circumstances approach, the task of the issuing magistrate is to make a practical, common sense decision whether, given all the circumstances set forth in the

---

1. We find it unnecessary to apply the analysis of the *Riverside* or *Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1974) courts in reaching our decision as the question of Appellant's detention is not determinative of his complaint. We would note, however, that *Riverside* was decided May 13, 1991, a month after Appellant's preliminary hearing was held. In light of our finding today, we deem it unnecessary to determine if the holding in *Riverside* should be made retroactive. We also note that the *Riverside* Court granted injunctive relief, but provided no other remedy for McLaughlin. We have previously set out the process for application of the exclusionary rule in *Black v. State,* 871 P.2d 35 (Okl.Cr.1994).

affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. The reviewing court's duty is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Langham,* 787 P.2d at 1281. Furthermore, the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Id.*

Appellant does not challenge the sufficiency of the search warrant, nor does he claim that the warrant affidavit is deficient in providing probable cause for the issuance of the warrant. A review of the record indicates the affidavit provided more than sufficient probable cause for the issuance of the warrant. To the extent that the warrant could have been issued, whether Appellant was detained or not, the question of his detention is not germane to the resolution of his complaint. *See* 22 O.S.1981, § 1225. We find the warrant contained sufficient probable cause, and the evidence obtained was properly seized and admitted.

■ At Proposition V Appellant claims it was error to allow his wife to testify, as it violated the statutory husband/wife confidence privilege. Appellant's motion in limine to prevent Ann Jones, his alleged wife, from testifying, was denied by the trial court. Appellant agrees that although he and Jones were "married" in a ceremony on February 16, 1990, he was still married to his ex-wife at the time and was not legally married to Jones. He did not divorce his ex-wife until May 30, 1990, and pursuant to Oklahoma law was unable to marry Jones until six (6) months had elapsed. 43 O.S. 1991, § 123. (Only 1½ months passed from the time Appellant divorced his first wife and Garrett's murder.) Additionally, Jones told the prosecutor she was not Appellant's wife at the time of the murder, and indicated the same to police, the press, and defense counsel. She also told her insurance company she was not married (in July, 1990) and continued to receive alimony payments from an ex-husband during the time she lived with Appellant, explaining she had been told by attorneys that she and Appellant were not married.

The time lag between Appellant's divorce and the murder, combined with Jones' statements to various individuals and entities belies Appellant's claims that the two were married. The statutory six (6) month time period also serves as an impediment to Appellant's claim of common-law marriage. Until the six months had elapsed, there could be no marriage. We find no error here.

■ At Proposition VI, Appellant alleges there was insufficient evidence to support the rape conviction. Arguing that the evidence of rape was circumstantial, Appellant claims the State failed to prove the use of force, violence or threats to support the rape conviction. Appellant urges the evidence showed a probability that Garrett was unconscious at the time of the assault, and since he was charged under 21 O.S.Supp.1984, § 1111(A)(3) ("where force or violence is used or threatened, accompanied by apparent power of execution to the victim . . .") and not Section 1111(A)(5) ("where the victim is at the time unconscious of the nature of the act and this is known to the accused"), there was insufficient evidence to support the crime as charged. Appellant apparently agrees that Garrett was the victim of rape, just not the rape as charged by the State.

Appellant's recollection of the evidence and testimony elicited concerning the infliction of Garrett's wounds is incorrect. There was more than sufficient evidence for the jury to find Appellant guilty of the rape charged, not the least of which was the slashing and mutilation of the victim which caused her death, preceded by her being hit with Appellant's Jeep. The testimony presented was that Garrett was alive during the time these wounds were inflicted; that there was a slash mark on her forearm which could have been inflicted as she raised her arm to shield herself from the attack; there was seminal fluid in her vagina, mouth and anus, all corresponding to Appellant's type B blood; hairs found on the body were consistent with Appellant's. Appellant's own statement was that Garrett was conscious when he saw her last.

While it is true that there was no eye witness testimony to the circumstances of the rape, the applicable test as to sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could find the crime charged was committed beyond a reasonable doubt. *Roberts v. State,* 715 P.2d 483, 485 (Okl.Cr.1986) (citing *Spuehler v. State,* 709 P.2d 202 (Okl.Cr.1985)). We find the evidence more than sufficient.

Appellant's final allegation at Proposition VII is that the State improperly used statements made during the course of Appellant's competency examination during the sentencing stage, constituting error. However, a review of the record reveals that attempts made by the State to question witnesses concerning Appellant's competency were objected to and sustained, although the trial court acknowledged that some of the statements were probably admissible. In an overabundance of caution, the court disallowed questioning concerning Appellant's competency. Once again Appellant has provided no citation to the record indicating prejudice. The fact that Appellant did not receive the death penalty requested by the State belies his argument that the jury imposed a greater punishment because of the State's actions. This argument is without merit.

After review of the errors alleged by Appellant, we are unable to conclude that any error has occurred which requires either reversal or modification of Appellant's sentence. Accordingly, the Judgment and Sentence is **AFFIRMED**.

JOHNSON, P.J., LUMPKIN and STRUBHAR, JJ., and CHAPEL, V.P.J., concur.