**´Dana Kingsley SMITH, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–15504.**

Court of Criminal Appeals of Oklahoma.

May 19, 1971.

Bill Sexton, Lawton, Okl., for plaintiff in error.

Larry Derryberry, Atty. Gen., Sondra Fogley, Asst. Atty. Gen., for defendant in error.

NIX, Judge:

Plaintiff in error, Dana Kingsley Smith, hereinafter referred to as defendant, was charged by information with the crime of Sale of Marihuana in the District Court of Comanche County, Case No. CRF–69–141. He was tried by a jury which found him guilty and fixed punishment at Three and One-Half (3½) years imprisonment. Judgment and sentence, in accordance with the verdict, was imposed on August 4, 1969, and this appeal perfected therefrom.

Specifically, defendant was charged with selling a quantity of marihuana to Richard Belleville for $25.00 on March 9, 1969, at approximately 1:30 A.M. in the Tabletop Cafe in Lawton, Oklahoma. Larry La-France testified that he was an investigator for the Comanche County Sheriff and was contacted by Belleville, an informer, about 1:00 A.M. on March 9, 1969, who told LaFrance he could make a "buy" of marihuana for him. LaFrance searched Belleville, gave him $25.00 for the pur-chase, and drove him to within one-half block of the Tabletop. Belleville entered the cafe, returning about ten minutes later with what appeared to be marihuana and without the $25.00. This substance was sealed and later turned over to John Mc-Auliff, a chemist for the Oklahoma Bureau of Investigation, who identified it as mari-huana.

Richard Belleville testified that on March 9, 1969, he was in the Army, sta-tioned near Lawton, and made contact with the defendant in the Tabletop Cafe about 1:00 A.M. concerning a marihuana buy; that he went to LaFrance and got the money for the buy; that he returned to the Tabletop and made the purchase from de-fendant about 1:30 A.M., and that he then took the marihuana to LaFrance.

The defendant, his girlfriend, Linda Marie Creamer; and Sonny Newsome, op-erator of the Trocadero Lounge, where Miss Creamer worked, testified that de-fendant was in the Trocadero Lounge dur-ing the time of the alleged sale. Miss Creamer testified defendant took her to work about 6:30 P.M. at the lounge on March 8th and remained there until after 1:30 A.M. the 9th, when she got off work and left with the defendant. They re-mained together for some four hours thereafter. Mr. Newsome testified he op-erated the lounge on the night in question, and that defendant came in with Miss Creamer about 6:30 P.M. and remained un-til 1:30 A.M. when he closed the lounge. Mr. Newsome said it was common for de-fendant to remain in the lounge playing pool while Miss Creamer worked and that he had been annoyed repeatedly by this practice.

Defendant was in the army, stationed at Ft. Sill near Lawton since his return from Vietnam and he testified that he was en-gaged to Miss Creamer. Defendant testi-fied that on the day in question he re-mained in the lounge from 6:30 P.M. to 1:30 A.M., and was in Miss Creamer's company thereafter. Defendant testified he knew Belleville and that he was a police

informer. Defendant denied making the sale.

■ Although Belleville stated there were other people in the cafe during the half hour in which the transaction took place, the state provided no other witnesses that saw defendant in the cafe. Even LaFrance, who gave Belleville the money, did not see defendant in the cafe and had never seen defendant until two days after the transaction when he arrested defendant. Thus, defendant is placed at the scene of the crime solely by the testimony of the informer Belleville, despite the fact the transaction took place in a public cafe where several people were present, many of whom were known by Belleville.

Belleville stated that he remembers two friends, Wally Connelly and Ira Lynn were present in the cafe during the transaction. However, Belleville did not know Connelly was also working for the sheriff as an informer. Yet, neither Connelly or Lynn were called as witnesses to corroborate Belleville's testimony or place defendant at the scene.

It was also established that Belleville, who had been reduced in military rank for being AWOL, had been promised a return to his prior rank for effective informer work. Furthermore, Connelly and Lynn had reported marihuana cases which were dismissed as apparent frame-ups.

Surely, under these facts, corroboration would seem essential, and at the very least, a cautionary instruction concerning the informer's testimony was required.

In Todd v. United States, 345 F.2d 299 (10th Cir. 1965), involving testimony of an informer in a marihuana sale, the United States Court of Appeals held:

"Though unwilling to outlaw government use of informers and their kin as 'dirty business' in which the sovereign ought not to indulge, the Courts have recognized the serious questions of credibility inherent in the use of such witnesses. To make sure they are properly identified for what they are in the scheme of the administration of criminal justice we allow wide latitude in cross-examination and submit the issue of credibility 'to the jury with careful instructions.' See On Lee v. United States, 343 U.S. 747, 757, 72 S.Ct. 967, 96 L.Ed. 1270.[1] Thus, *if the incriminating testimony of an informer is uncorroborated or unsubstantiated, special cautionary instructions are surely required.* See Orebo v. United States, 9 Cir., 293 F.2d 747; Joseph v. United States, 5 Cir., 286 F.2d 468; United States v. Masino, 2 Cir., 275 F.2d 129. If such testimony is corroborated in critical respects, we nevertheless favor careful instructions in form and substance calculated to call attention to the character of the testimony of the informer, leaving to the jury the ultimate question of value and credibility. * * *" (emphasis added) 345 F.2d at 300.

In Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952), the United States Supreme Court held:

"The use of informers, accessories, accomplices, false friends, or any of the other betrayals which are 'dirty business' may raise serious questions of credibility. To the extent that they do, a defendant is entitled to broad latitude to probe credibility by cross-examination and to have the issues submitted to the jury with careful instructions." 343 U.S. at 757, 72 S.Ct. at 973.

It is the duty of the trial court to give proper instructions as required by the evidence. Lester v. State, Okl.Cr., 408 P.2d 563. A defendant has a fundamental right to instructions necessary for a fair and proper determination of the issues presented. Townley v. State, Okl.Cr., 355 P.2d 420. Hall v. State, Okl.Cr., 316 P.2d 620. We, therefore, conclude that under the facts herein defendant was denied a fair trial by the failure of the trial court to give a cautionary instruction as to the testimony and credibility of the informer whose testimony alone placed defendant at the scene of the crime.

Furthermore, the trial court did not give an instruction concerning the defense of alibi. Defendant's sole defense was that he was elsewhere at the time of the crime. Certainly this was a material issue and required a proper instruction as a matter of fundamental right. Hall v. State, supra.

Defendant further assigns as error the trial court's questioning of the chemist as to the composition and effect of marihuana and his extensive examination of the state's witness, Belleville, as to the effect on him and others from using marihuana and other drugs including narcotics such as heroin.

After the state had finished its examination of the informer, Belleville, the court propounded numerous such questions touching on drug addiction, case histories, research and literature, even though the effect of marihuana and other drugs on the witness or others was not a material issue.

The use of marihuana and narcotics and their behavioral results was not an issue in the trial. Neither side had attempted to introduce such an issue. This evidence, frequently nothing more than rank hearsay, was immaterial, incompetent and prejudicial to defendant by inflaming the jury with crimes for which defendant was not on trial.

The error in admitting such evidence is compounded with its introduction by the court who should at all times be impartial and guard that only material matters come before the jury. "The greatest care should be observed that nothing is said that can by any possibility be construed as an expression of the court's views respecting the merits of a criminal case." Harrell v. State, 85 Okl.Cr. 293, 187 P.2d 676.

We therefore conclude that the trial judge's extensive examination of witnesses concerning the use and effect of marihuana and other drugs was prejudicially immaterial and incompetent.

Counsel for the defendant is to be complimented on his excellent representation on appeal, particularly since he was court appointed.

Reversed and remanded.

BRETT, J., concurs.

BUSSEY, Presiding Judge (specially concurring):

I believe the case should be reversed and remanded for the trial court's failure to properly instruct on the defense of alibi.