Marshall "Bozo" GEE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–75–8.

Court of Criminal Appeals of Oklahoma.

July 9, 1975.

Thomas W. Wisener, Ashton, Ashton & Wisener, Lawton, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., Jim Patton, Legal Intern, for appellee.

## OPINION

BLISS, Judge:

The appellant, Marshall "Bozo" Gee, hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Comanche County, Case No. CRF–74–168, for the crime of Unlawful Delivery of Heroin. Defendant was sentenced on the 8th day of July, 1974, to serve a term

of twenty (20) years in the State penitentiary and assessed fine in the amount of Five Thousand ($5,000.00) Dollars. From that judgment and sentence the defendant now appeals.

The State called as its first witness Sue Ann Lodgston. The witness testified that she was acquainted with Jim Ingram, a police officer in the Narcotics Division of the Lawton Police Department. She became acquainted with him when her husband was arrested for possession of narcotics. The witness stated that she had a conversation on the 8th day of March, 1974, with Officer Ingram. At this point she testified that she was acquainted with Marshall "Bozo" Gee, the defendant, and that on the same evening she went to meet the defendant at the Northside Ice Dock. She asked the defendant whether he could get any marihuana or heroin. She stated that he replied that he could get her some of whatever she desired. After talking with the defendant she went to the police station. At that time she and her car were searched in order to ascertain whether drugs were present. Officer Livingston searched her car, and she was given a strip search by a policematron. She was then given $30.00 with which to make the buy. She proceeded to the ice dock, went inside, and told the defendant that she had money for two 15 cent papers of "smack" (heroin). The defendant then went to a car and then returned to the witness' car and handed her some heroin. The witness then drove away in her car. After traveling a few blocks, the witness pulled over, Officer Ingram came to her car and she told him of her buy. When Officer Livingston arrived she handed him the packets of heroin. They arrived at the police station and she was again strip searched and told to go home.

Upon cross-examination she stated that she was not being paid to do this work for the police. She testified she felt it might make the police look more favorably toward her husband with regard to narcotic charges pending against him. She stated that a friend of hers who had helped the police received a lighter sentence, and that by helping the police she hoped that her husband would receive a lighter sentence. She further indicated that at no time were any promises made with regard to consideration for her husband. She testified that she had previously bought "dope" and that was how she knew where to go in order to make the purchases. She stated that she only bought "dope" from the defendant one time. On March 9, she bought what was purported to be "dope" from the defendant but the substance was not "dope." She declared that on March 9 she gave the defendant $500.00 for what turned out to be 50 packets of baking soda. She stated at the time of the buy she thought the substance was "dope," but she was told at a later time that it was not. The witness further testified that the morning before the trial she read her testimony from the preliminary transcript. She stated that she read her testimony to refresh her memory as to what was said and asked. She stated that she received the information from Officer Livingston at the District Attorney's office.

The second witness for the State was Officer David Livingston. Officer Livingston testified that he was employed by the Lawton Police Department. On March 8, 1974, he stated that Sue Ann Lodgston met him and Officer Ingram at the police station. She was given a strip search by a policematron. The witness stated he searched her car and found it free of drugs. The witness testified he gave Mrs. Lodgston $30.00 with which to make a purchase of heroin from the defendant. The officer then testified that he proceeded to the ice dock and waited for Mrs. Lodgston to arrive. The witness stated that when Mrs. Lodgston arrived she went into a door and stayed for a few minutes. At this time the defendant walked to a car, stopped momentarily and then walked to Mrs. Lodgston's car. The witness testified that Mrs. Lodgston pulled away from the ice dock and he followed. When she

stopped he pulled up beside her, walked over to the car and was handed two tinfoil packets containing what later was found to be heroin.

Upon cross-examination Officer Livingston stated that he was not present during the actual strip search of Mrs. Lodgston. He further stated that when Mrs. Lodgston left her car she was never out of his sight. The witness stated that the morning before the trial Mrs. Lodgston asked him several questions concerning the testimony. Further, the witness and Mrs. Lodgston discussed these questions with the District Attorney. A copy of the transcript was given to Mrs. Lodgston because she asked Officer Livingston if she could read it. Approximately 20 minutes later she returned the transcript to Officer Livingston.

The next witness for the State was Jim Ingram. The witness testified that he worked for the Narcotics Division of the Lawton Police Department. He indicated that on March 8, 1974, he and Officer Livingston had a meeting with Mrs. Lodgston to discuss the purchase from the defendant. He stated that a policematron was summoned to give a strip search of Mrs. Lodgston and her clothing. Also he testified that he observed Officer Livingston search Mrs. Lodgston's car. After Mrs. Lodgston returned from the search he stated that he kept her in direct surveillance at all times until she reached the ice dock on Second Street. When Mrs. Lodgston stopped at the ice dock he proceeded north past the ice dock and drove on. He stationed himself about one half block away where he could watch the vehicle. He observed a black male come to the driver's side of the car and then walk back. She stepped out of her car and walked to the entrance of the ice dock. He declared that a few seconds later he saw her come back, re-enter her car and another black male walked up to another vehicle parked in front of Mrs. Lodgston. The witness testified that the black male opened the door of her car, stayed there a few seconds and then left that car and proceeded to the passenger side of Mrs. Lodgston's car. The officer testified that the man stepped into the car with Mrs. Lodgston and stayed a few seconds. After he departed that vehicle, the Lodgston car traveled north on Second Street and stopped. The witness indicated that he walked to Mrs. Lodgston's car and she responded that she "had the stuff." When Officer Livingston arrived Mrs. Lodgston handed him what appeared to be two tinfoil packets. At that time she was instructed to go back to the police station.

Upon cross-examination the witness stated that he could not identify the individual who got into the Lodgston vehicle other than being a black male.

The fourth witness for the State was William Caveny. He stated he was a forensic chemist from the Oklahoma State Bureau of Investigation. He testified he received a parcel of evidence from Jim Ingram of the Lawton Police Department. The witness testified he assigned a laboratory number to the parcel and kept it in an evidence locker until his analysis on a later date. The analysis revealed that the substance was heroin.

Thereupon, both sides rested.

■ The defendant's first assignment of error asserts that the court erred in failing to give a cautionary instruction as to the testimony of an informant. Defendant cites numerous cases to support his argument; however, all may be distinguished on the facts. Special emphasis is put on *Smith v. State,* Okl.Cr., 485 P.2d 771 (1971). Defendant relies on *Smith* to support the assertion that it is a fundamental requirement that the court give a cautionary instruction when the testimony of an informant is used.

In *Smith v. State, supra,* an informer was promised return to former military work for effective work as an informant. This Court held that a cautionary instruction as to the testimony and credibility of the informant whose testimony alone placed the defendant at the scene of the crime

was necessary. We cannot siphon from the language of *Smith* a fundamental requirement that a trial court give cautionary instructions when an informant is used and quoting from that case we stated:

"Surely, *under these facts,* corroboration would seem essential, and at the very least, a cautionary instruction concerning the informer's testimony was required." (Emphasis added)

The facts in the instant case are quite different. Although not necessary, the informant's testimony was corroborated by Officer Livingston in placing the defendant at the scene of the crime. Further, the record reveals that no promises were made to this informant.

Defendant cites *Roquemore v. State,* Okl.Cr., 513 P.2d 1318 (1973) as requiring a cautionary instruction even though defendant did not request one, and notwithstanding the fact that the informer's testimony was corroborated. In that case the court felt that there was some uncertainty as to the officer's visibility. Further, the informant in *Roquemore* had been promised that the police would not prosecute him for selling marijuana if he would make buys for the police. In the case at bar, the record reveals that Officer Livingston was directly across the street from the scene of the crime and had view of Mrs. Lodgston at all times. Also, in the present case, as we stated previously, the defendant had not been promised anything.

■ If the defendant had desired the use of cautionary instructions he had a duty not only to object to the instructions as given, but to submit written instructions as he would have the court give them, and if the court should refuse his requested instructions to take exception thereto. This Court stated in *Gaddy v. State,* 81 Okl.Cr. 236, 162 P.2d 787 (1945) in Syllabi 1:

"In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict. If counsel for defendant are of the opinion that addition-al instructions should be given to the jury, it is their duty to reduce them to writing, submit them to the trial judge, and request that they be given. If they fail to do this, a conviction will not be reversed unless the court is of the opinion, in the light of the entire record and instructions of the court, that by the failure of the trial court to instruct the jury upon some material question of law, the defendant has been deprived of his substantial rights."

See also, *Skinner v. State,* Okl.Cr., 439 P.2d 962 (1968) and *Schapansky v. State,* Okl.Cr., 478 P.2d 912 (1970).

■ We find that the defendant was not prejudiced in any way by failure to give cautionary instructions. It is within the province of the jury to weigh the credibility of each witness. The instructions given to the jury by the trial judge are sufficient:

"You are the judges of the facts. The importance and worth of the evidence and testimony is for you to decide. In deciding this you may consider: the interest, if any, which a witness may have in this trial; . . . the partiality or prejudice of a witness, if any has been shown; . . . whether a witness could remember and tell about past happenings; . . ."

In view of the fact that the attorney did not object to any instructions given nor submit any requested instructions, we find the proposition to be without merit.

■ Defendant's second assignment of error is that the trial judge committed reversible error in limiting defendant's right of cross-examination. The defendant contends that if the cross-examination had not been limited the defendant could have apprised the jury of the informer's hopes of a reduction of the charges pending against her husband. Also, her credibility could have been attacked by showing the informant regularly used drugs and bought or sold drugs. However, the record reveals all of this information had been brought out

by cross-examination. The informant testified that she was not being paid by the police, but hoped that leniency would be shown to her husband who had charges pending against him. The informant further testified that she had bought drugs previously after an objection to the question had been overruled. Further, she stated that she had bought drugs a couple of times by herself and several times with her husband.

From the transcript it is clearly evident that the jury was apprised of any possible motives of the informant. Therefore, any further questioning upon the subject would only be repetitious. In *Withers v. State,* Okl.Cr., 507 P.2d 552 (1973) this Court held:

"The defense cites *Henry v. State,* 6 Okl.Cr. 430, 119 P.2d 278 (1912) for the proposition that proper examination is a fundamental right which should not be limited. This Court agrees with the holding of *Henry, supra,* in that it is reversible error to limit the *scope* of cross-examination and to thus exclude testimony which would show bias or prejudice but this Court feels that this case does not hold that the *extent* of cross-examination cannot be or is not within the discretion of the trial court."

We find the scope of the cross-examination was not limited on the material elements of the case and, therefore, this proposition is without merit.

Defendant's third assignment of error is that the trial court erred in admitting the testimony of certain State's witnesses where there was misconduct on the part of the State in violating the rule of sequestration. At the preliminary hearing the rule of sequestration was called for by the defendant as well as at the beginning of the trial. By analogy the defendant contends the rule has been violated due to the fact the informant and an officer were allowed to read the transcript of the preliminary hearing the morning before the trial.

There being no Oklahoma case on point, the defendant cites *Miller v. State,* 169 Neb. 737, 100 N.W.2d 876 (1960). In *Miller* the transcript of another witness during trial was furnished an informer before he testified at trial by the county attorney. The court in *Miller* held:

"There can be little doubt that this was a violation of the spirit, if not even of the letter, of the sequestration order. . . . however this did not furnish grounds for setting aside the verdict."

*Miller* found that where defendant at commencement of trial moved for an order sequestering witnesses and such an order was entered, the act of the prosecutor in giving a transcript of testimony of a State witness to another witness for perusal before he testified was improper but was not prejudicial to defendant.

*Miller* is clearly distinguishable from the case at bar in that the rule was violated during the trial. In the case at bar the trial had not yet commenced when the transcript was read. After the preliminary hearing the rule expires until invoked at the commencement of the subsequent trial.

The defendant further cites *Thompson v. State,* 73 Okl.Cr. 72, 118 P.2d 269 (1941), where the defendant asked all witnesses to be placed under the rule and the court placed all of the witnesses under the rule except two highway patrolmen and a police officer. They were the only three people who testified that the defendant was under the influence of intoxicating liquor. The defendant objected to the officers being excepted from the application of the rule and the court stated:

"This ruling of the court might have been harmless, except that when considered in connection with other events that transpired during the trial, hereinafter discussed, it amounts to depriving the defendant of that fair and impartial trial guaranteed him under our laws."

We readily observe the language "This ruling . . . might have been harmless, except that when considered in connection with other events . . . ." The case

was reversed because defense counsel was wrongfully limited in the cross-examination of a witness and the county attorney harassed the defendant's witnesses by having the sheriff arrest them for perjury after they testified at trial. Furthermore, the occurrence transpired during the trial.

 The rule of sequestration has its roots in antiquity. The expedient of separating a party's witnesses, in order to detect falsehoods by exposing inconsistencies, seems to have been early discovered and long practiced in various communities. VI Wigmore on Evidence, § 1837, at 347 (3rd ed. 1940). The Scriptures record the story of Daniel's judgment in Susanna's case and gives this expedient a unique place in our law.[1] The use of the rule has become engrained in the common law. Many jurisdictions have made provisions for sequestration by statute. Oklahoma has not. The process of sequestration consists merely in preventing one prospective witness from being taught by hearing another's testimony. The majority of jurisdictions, including Oklahoma, follow the English doctrine in holding the rule grantable only in the trial court's discretion rather than a matter of right. *Hatfield v. State,* 49 Okl.Cr. 41, 292 P.2d 1058 (1930). Wigmore states that the time for sequestration begins with the delivery of testimony upon the stand and ends with the close of testimony. As in the case at bar the rule was not in force between the preliminary hearing and the trial. The rule ends with the close of testimony. It is impossible to prevent witnesses from consulting prior to trial and after the preliminary hearing. Furthermore, the transcript of the preliminary hearing becomes part of the public record after it is transcribed. It is open for review by anyone prior to trial. If the defendant feels that there are dangerous possibilities inherent in such use the alleged collusion can be brought to the surface by an effective cross-examination.

We find no error in the reading of the transcript. The third proposition is found to be without merit.

 The defendant alleges as his fourth assignment of error excessive sentence induced by passion and prejudice of the jury. In the case at bar, the defendant was given a term of twenty (20) years' imprisonment and a fine of Five Thousand ($5,000.00) Dollars. The punishment provided in 63 O.S.1971, § 2–401, subd. B(1), is not less than (5), nor more than (20), years' imprisonment and a fine not greater than Twenty Thousand ($20,000.00) Dollars. The sentence, being within the range provided by statute, is not excessive. In *Roberts v. State,* Okl.Cr., 473 P.2d 264 (1970), this Court quoted with approval *LaRue v. State,* Okl.Cr., 404 P.2d 73:

> "The question of excessiveness of punishment must be determined by study of all the facts and circumstances in each particular case, and the Court of Criminal Appeals does not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the court."

In *Nachtrieb v. State,* Okl.Cr., 513 P.2d 597 (1973) and *Bruton v. State,* Okl.Cr., 521 P.2d 1382 (1974), this Court held that if the sentence is within the range provided by law it is not excessive.

 Defendant further submits that two evidentiary harpoons aroused the passion of the jury and influenced the verdict thereby. The defendant admits the statements were not objected to, but nevertheless warrant modification. This Court has repeatedly held that if proper objections were not made during the course of the trial the defendant is deemed to have waived any right to raise this objection on appeal. See, *McCluskey v. State,* Okl.Cr., 372 P.2d 623 (1962); *Borden v. State,*

---

1. 1603, Sir Walter Raleigh's Trial, Jardine Crim.Tr. I, 419; 1683, Sidney's Trial, 9 How. St.Tr. 817, 861; 1725, Braddon, Observations on the Earl of Essex's Murder, 9 How.St. Tr. 1229. See VI Wigmore on Evidence, § 1837, at 348 (3rd ed. 1940).

Okl.Cr., 407 P.2d 909 (1965) and *Smith v. State,* Okl.Cr., 378 P.2d 790 (1963). In light of the foregoing, we find this assignment of error to be without merit.

 Defendant's last proposition urges that accumulation of error requires reversal. After careful examination of the record we found each of the propositions to be without merit. Thus, there is no accumulation of error which requires reversal. *Haney v. State,* Okl.Cr., 503 P.2d 909 (1972) and *Glover v. State,* Okl.Cr., 524 P.2d 51 (1975).

 As in *Hildebrandt v. State,* Okl. Cr., 507 P.2d 1323 (1973), we observe that because of the indigency of the defendant and the term of twenty (20) years' imprisonment and a fine of Five Thousand ($5,000.00) Dollars, justice would best be served by modifying the judgment and sentence to a term of twenty (20) years' imprisonment and, so as modified, the judgment and sentence is *affirmed.*

BRETT, P. J., concurs in results.

BUSSEY, J., concurs.