**Robert Lynn COOPER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–82–199.**

Court of Criminal Appeals of Oklahoma.

April 4, 1983.

E. Alvin Schay, Appellate Public Defender, Norman, for appellant.

Jan Eric Cartwright, Atty. Gen., Susan Talbot, Chief, Appellate Criminal Div., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Johnny Robert Collings disappeared on the 28th day of November, 1966. His dismembered body was recovered from a frozen creek near Apache, Oklahoma, on December 24 and 25, 1966. An autopsy revealed that the cause of death was four .22 caliber bullet wounds to the head. Despite

an immediate investigation, no charges were filed for some fourteen years. However, on the first day of October, 1981, Robert Lynn Cooper was convicted of first degree murder in the case and sentenced to life imprisonment.

As his first proposition of error, appellant contends that the trial court erred in admitting into evidence two photographs of the corpse. One such photograph is a black and white snapshot of the back of the severed head. The object is largely an undifferentiated mass of black hair. The second photograph is an 8 × 10 inch black and white picture of the remainder of the corpse, the nine or so pieces placed in roughly correct relative position on the examining table.

■ In cases where the photographs in question depict a gruesome scene, the trial court must consider whether the probative value of the particular photograph outweighs the prejudice potentially accompanying its admission, and this Court will not interfere with the ruling unless it appears that the trial court abused its discretion. *Riggle v. State,* 585 P.2d 1382 (Okl.Cr.1978). In this case, the photographs were admissible as showing the suppression or destruction of evidence, see generally *Wills v. State,* 636 P.2d 372 (Okl.Cr.1981), as confirming partially the confession allegedly given by appellant to a witness, Jerry Geionety, and as illustrating and corroborating oral testimony in the case. The photos also showed the condition of the body at the time of post-mortem examination, thus explaining the difficulty encountered by doctors in fixing the exact time of death, an issue emphasized by the defense at trial. The first proposition is therefore without merit.

Appellant's second proposition of error is that he was denied due process by the fact that a witness was allowed to invoke the attorney-client privilege. A key state witness, Jerry Geionety, died prior to trial. The defense stipulated that the preliminary hearing testimony of the witness could be read into evidence at trial. During the defense case-in-chief, an attorney who represented the deceased during the initial investigation of the murder was called to the stand, and appellant sought to examine him as to statements made by the deceased concerning the murder. The trial court sustained the attorney's claim of privilege.

Appellant's suggestion that the privilege could not be invoked due to the death of the client is without merit. The privilege may be claimed by "the personal representative of a deceased client", and the attorney or attorney's representative "is presumed to have authority to claim the privilege" on behalf of the client. 12 O.S.1981, § 2502(C).

■ Appellant's Sixth and Fourteenth Amendment rights were not violated in this regard. No authority is cited or found for the proposition that the right to confront a witness includes the right to call and examine the witness's attorney. See *United States v. Le Pera,* 443 F.2d 810 (9th Cir. 1971). Moreover, the right to compulsory process does not negate traditional testimonial privileges such as the attorney-client privilege. See *Washington v. State of Texas,* 388 U.S. 14, 23, 87 S.Ct. 1920, 1925, 18 L.Ed.2d 1019 (1967), Note 21. We find no merit to this argument.

■ As his final proposition of error, appellant contends that he was denied a fair trial due to prosecutorial misconduct. In the first instance complained of, a defense witness was asked on cross-examination if he was present when police interviewed his son in connection with the murder. The witness responded in part that his son had been questioned for some time "before I got a lawyer." No objection was interposed to the question or the answer. The prosecutor then asked "[w]hy did you get a lawyer...?" The trial court sustained a defense objection, severely reprimanded the prosecutor, and admonished the jury not to consider the remark. We find that the remark was not of such magnitude as to have determined the verdict, and the error was cured. *Cole v. State,* 647 P.2d 446 (Okl.Cr.1982); *Kitchens v. State,* 513 P.2d 1300 (Okl.Cr.1973).

■ The second instance involved the prosecutor's statement during closing argu-

ment that a witness testified to the presence of "drag marks" on the bank of the creek where the body was found. However, the record reveals that such testimony was received without defense objection. The remark was within the proper scope of the right of argumentation in closing argument. See generally *Kennedy v. State,* 640 P.2d 971 (Okl.Cr.1982). In addition, the error, if any, was waived by the failure to object during closing argument. *Marshall v. State,* 551 P.2d 291 (Okl.Cr.1976). The third proposition is without merit.

The suggestion that an accumulation of error has been shown requiring a new trial is not well taken in light of our disposition of appellant's prior propositions of error. *Brinlee v. State,* 543 P.2d 744 (Okl.Cr.1976).

The judgment and sentence is AFFIRMED.

BUSSEY, P.J., and BRETT, J., concur.