**Phillip Dewitt SMITH, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–84–506.**

Court of Criminal Appeals of Oklahoma.

May 19, 1987.

Rehearing Denied June 22, 1987.

Patti Palmer, Deputy Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Hugh A. Manning, Asst. Dist. Atty., Oklahoma City, for appellee.

## OPINION

BUSSEY, Judge:

Phillip DeWitt Smith was convicted by a jury in Muskogee County District Court of Murder in the First Degree. The jury found the existence of three aggravating circumstances in accordance with 21 O.S. 1981, § 701.12 and recommended that the death penalty be imposed. The sentence was assessed accordingly by the trial court.

The residents of a four unit apartment complex were awakened in the early morning hours of November 4, 1983, to sounds of groaning and what sounded like people struggling. It was not until that afternoon that the body of Matthew Taylor was found in his apartment. He had been savagely beaten with what the medical examiner who autopsied the victim described as a blunt object, which had both round surfaces and a squared surface. The State theorized, and certain evidence indicated, that the murder weapon was a hammer.

A great deal of circumstantial evidence connected appellant to the homicide including the testimony of the individual who drove Smith to the deceased's apartment at the approximate time of the murder. Also, two friends of appellant testified to lending him a hammer within a few hours prior to the crime. Appellant made admissions indicating he knew when arrested and interviewed that the victim had been killed with a hammer. He admitted being at the victim's apartment during the same evening but prior to the homicide. At that time, Taylor had given him twenty dollars to purchase a bag of marijuana which he never delivered.

Appellant was arrested several months after the crimes. He left Oklahoma a few days after Taylor's murder. While awaiting trial, he told a fellow inmate that he had killed Taylor when robbing him. He stated that he had outstanding criminal charges and needed to leave the State.

## I.

Appellant makes a number of assignments of error, one of which is that he was denied due process of law because the judge presiding over his preliminary hearing was the brother of the district attorney representing the State. He indicates that the conflict resulted in prejudice to him because several defense witnesses were mistakenly dismissed before they were able to testify. Appellant contends that this error was made by an employee of the district attorney.

Appellate counsel fails to acknowledge the express waiver of any conflict made by appellant and his counsel in open court prior to the beginning of the preliminary hearing. We are not informed why this waiver would be invalid. *Willis v. State*, 650 P.2d 873 (Okl.Cr.1982). The incident alleged to have prejudiced appellant appears to have been more a misunderstanding than an intentional wrong, and was without serious consequence. This assignment is without merit.

## II.

Appellant contends that certain photographs of the victim were not properly admitted because there was insufficient probative value to outweigh the danger of unfair prejudice. Those photographs of which appellant complains depict: the vic-

tim's head portraying loss of hair; two black and white photographs showing the victim's hands which received defensive wounds; three black and white photographs showing extensive wounds to the shaved head, one of which shows the skull after the overlying skin had been peeled back; and, one photograph of the victim's body indicating his pants pockets had been turned inside-out.

For photographs to be admissible, their content must be relevant and their probative value must outweigh their prejudicial effect. *Glidewell v. State,* 626 P.2d 1351 (Okl.Cr.1981). The fact that the pictures are gruesome does not of itself cause photographs to be inadmissible. In fact, most homicide cases include photographs of the victim and the death scene which express the nature of the attack and other gruesome but pertinent facts of which a jury is properly informed.[1] To exclude relevant evidence from a jury's consideration only because it is repulsive would be to say that juries cannot fairly consider evidence of crimes and this would be a betrayal of our jurisprudential system. It is not when photographs are gruesome that they should be excluded. Rather, it is when their relevance has become secondary to their prejudicial effect. 12 O.S.1981, § 2403.

The appellant relies on this Court's holding in *Oxendine v. State,* 335 P.2d 940 (Okl.Cr.1958), to support his assertion that the trial court herein abused its discretion in admitting the photographs of the victim's injuries which were taken prior to and during the autopsy. It is the opinion of a majority of this Court that *Oxendine* and other cases of this jurisdiction clearly support the admissibility of the photographs.

*Oxendine* involved the shooting death by two defendants who testified at their trial and "admitted the crime in intricate detail." *Id.* at 943. The trial court allowed into evidence color photographs of the victim's nude body which had been autopsied and grossly sutured. There was no evidentiary purpose in admitting the photographs, in contrast to those of the present case.

██ Other than the photographs in this case, there was no direct evidence[2] that the weapon used on the victim had a rounded surface. While the medical examiner could suggest the probable configuration of the object used to beat the victim, the photographs more conclusively demonstrated it. The photograph of the bare skull showed the round hole in it. The evidence was material in identifying the instrument of death and the killer. It was known that appellant borrowed a hammer, which was never found, a short time before the murder. The photographs were also material in establishing the intent of the culprit; in this case, malice aforethought.

This Court held in *Oxendine:*

In the case at bar there was no reason for the introduction of the colored photo slides. There was no issue nor controversy as to the cause of death. *The defendants admitted the crime in intricate detail. The photos could not possibly lend assistance in the determination of defendant's guilt.* It was admitted. *Had there been a conflict as to the shooting or cause of death or location of the wounds, or an issue to which the photos were relevant, then and in that event, they would have been admissible had they been taken prior to the performance of the autopsy. But the autopsy was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and pas-*

---

1. *E.g., Stafford v. State,* 665 P.2d 1205 (Okl.Cr. 1983), *vac. on other grounds,* 467 U.S. 1212, 104 S.Ct. 2651, 81 L.Ed.2d 359 (1984), *aff'd* 700 P.2d 223 (Okl.Cr.1985) (photographs of bullet riddled bodies in walk-in freezer admitted); *Cooper v. State,* 671 P.2d 1168 (Okl.Cr.1983) and *Cooper v. State,* 661 P.2d 905 (Okl.Cr.1983) (photographs of victim hacked into nine pieces and buried for a month before thrown in a creek admitted); and *Hedgepath v. State,* 600 P.2d 348 (Okl.Cr. 1979) (photographs admitted of severed head and of neck wound to victim who had been decapitated by machete).

2. OUJI–CR 801 provides: "'Direct Evidence' is the testimony of a person who asserts actual, personal knowledge of a fact, such as the testimony of an eyewitness. 'Direct Evidence' may also be, an exhibit such as a photograph which demonstrates the existence of a fact."

*sion of the jury.* This Court feels that the photos were wholly inadmissible in the form presented and their admission was an abuse of the trial court's discretion. If the photographs had been limited to the area showing the points of entrance and possible egress of the bullets without showing the gruesome incisions incident to the autopsy, the action of the court in the admission of such cumulative evidence could not be held to be reversible error, but the pictures of the nude body of this young woman showing the stated visual results of the autopsy cannot help but shock the viewer. The whole procedure seems to have been so unnecessary and was highly prejudicial and forces a reversal. (Emphasis added.)

*Id.* at 943.

In the present case, the wounds were the handiwork of the defendant, not the medical examiner. In order to show the nature of the injuries and of the weapon used, the head had been shaved by the medical examiner and in one photograph, the scalp pulled back after the skull cap had been incised and lifted. The photographs were critical in the chain of circumstantial evidence linking Smith to Matthew Taylor's death.

This case is further distinguishable from *Oxendine* in that Smith did not confess to the crime; he did not describe it in "intricate detail" to the jury. Nor could the medical examiner conclusively describe the murder weapon. The photographs were of significant probative value, and their gruesomeness was secondary to their evidentiary worth. Therefore, this Court should not interfere with the trial court's rulings. *Cooper v. State,* 661 P.2d 905 (Okl.Cr. 1983). *Compare Newbury v. State,* 695 P.2d 531 (Okl.Cr.1985) (photographs admissible to prove State's theory that defendant struck victim on head with a hammer, slashed her with a knife, and ran over her with a pickup truck); *Cooper v. State,* 671 P.2d 1168 (Okl.Cr.1983) (black and white photographs of dismembered corpse admissible to prove destruction of evidence, corroborating partial confessions of testified to by others, and illustrating and corroborating other significant evidence); *De-*

*Vooght v. State,* 722 P.2d 705 (Okl.Cr.1986) (photographs of badly injured murder victim admissible as probative of location and extent of victim's wounds, force of rape, and location of body).

### III.

Appellant assigns as error the admission into evidence of a claw hammer which resembled the one loaned to appellant the evening before the homicide. He argues that he was unable to receive a fair trial as a result of the prejudice this caused to him.

Clifton Stewart testified that sometime around midnight November 3, 1983, appellant had knocked on his door asking for a hammer with which to repair a battery post on a car. Appellant had promised to return the hammer and never did, later claiming he had left it in someone's automobile. Stewart was given money by the prosecutor to buy a hammer like the one he had given to the appellant. He did, and it was this one which was introduced into evidence at trial.

■ We held in *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173, that it was not error to introduce a bat which was like the one that had been used to beat the victim. There, as here, it was made clear at the time it was admitted that the instrument was not that used in the offense. The hammer, Stewart testified, was identical to the one he previously owned except that it was new and had an Otasco sticker on it.

Appellant contends that he was prejudiced by admission of the hammer because it allowed the State to "bootstrap" into evidence a certain photograph of the victim's skull showing a round punched out hole in it approximating the size and shape of the hammer's striking surface. However, these pictures would have been admissible even if the hammer had only been described. See our discussion of the prior assignment. We find no abuse of the trial court's discretion in admitting the hammer.

## IV.

During the autopsy of Taylor, the medical examiner removed loose strands of hair from the victim's hands. For some unknown reason, the hairs did not reach the office of the Oklahoma State Bureau of Investigation to which they had been mailed. As a result, a scientific hair comparison analysis was not made to determine the origin of the hair.

The medical examiner was allowed to testify over an objection from the defense that because of the color and general appearance of the hairs, he suspected they belonged to Taylor. He further testified that in cases where repeated blunt injury is inflicted to the head, the victim will grasp his head and tangle his own hair in his hands. Appellant contends the medical examiner should not have been allowed to offer this testimony since there is no evidence that he was qualified as an expert in scientific hair comparison.

 We disagree with appellant that the medical examiner was not qualified to give his opinion as to the origin of the hair. He did not represent his opinion to be based upon scientific hair comparison analysis, but rather on the knowledge, skill, and experience he held in forensic medicine. He was well qualified to express his opinion as an expert. *See* 12 O.S.1981, § 2702. Even a layman may express opinions rationally based on his perception. 12 O.S. 1981, § 2701(1). There was no error.

## V.

As appellant's next assignment of error, he contends the trial court improperly forbade his attorney from inquiring of a certain witness, Michael Oakley, whether his friend Jackie Johns had told him he could be charged as an accessory to murder prior to the time Oakley gave his statement to the police. Both Oakley and Johns had been connected to a television which had been stolen from Taylor's apartment the evening prior to his homicide. Johns admitted to the police, after making several false statements, that he and Oakley had stolen Taylor's television during the evening of November 3, 1983. Appellant contends he should have been able to show the circumstances under which Oakley made his statement to the police, arguing that the subject was not hearsay and that it was admissible to show state of mind.

From our reading of the transcript, it does not appear that appellant was in fact denied the opportunity to cross-examine Oakley along these lines. At one point during cross-examination of Oakley, defense counsel asked two questions at once and an objection was sustained concerning one of the inquiries. No objection was made or sustained to the question of whether Johns told Oakley he could be charged as an accessory, but defense counsel did not pursue it. Later, the defense did ask Oakley if the police told him that if he would cooperate with them and tell them about the television, they wouldn't charge him with a crime. He answered affirmatively. This assignment is without merit because no error occurred and the defense was able to show what it had wanted to by the later questioning. (Oakley was charged with burglary prior to Smith's trial).

## VI.

A former cellmate to appellant named Billy Joe Dickson testified that appellant told him he had outstanding warrants for parole violation, Burglary Second Degree, and for Kidnapping his young daughter. Appellant told him he needed money to leave Oklahoma to avoid the warrants and that he killed Smith when he was trying to steal Smith's money. Appellant asked for a mistrial, which was denied.

Appellant contends the testimony violated the trial court's order on appellant's motion in limine and that his motion for mistrial should have been granted. We disagree on both points.

During the discussion on appellant's motion, the prosecutor said he did not believe the witness knew the offenses that the outstanding arrest warrants were based upon, but stated he did not intend to go into the offenses during his examination of the witness. The witness volunteered the

information about the charges after simply being asked the nature of the conversation between appellant and himself.

■ Evidence of offenses other than the one for which the defendant is on trial may be introduced to prove motive. 12 O.S. 1981, § 2404; *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). We find the trial court properly allowed evidence of appellant's admissions. It was relevant evidence of motive and the prosecution gave pretrial notice of offenses that might be disclosed at trial according to the guidelines established in *Burks*, 594 P.2d at 775–77. Also, the trial court is not bound by its earlier ruling on a motion in limine and may change it. *Teegarden v. State*, 563 P.2d 660 (Okl.Cr. 1977). The trial court did limit the jury's consideration of the evidence of other crimes to the inference of motive. There was no error.

## VII.

Appellant accuses the prosecutor of misconduct so egregious as to render the trial fundamentally unfair. He first claims the prosecutor violated the trial court's ruling on appellant's motion in limine by not advising Billy Joe Dickson to not mention the offenses for which there existed outstanding arrest warrants. However, upon our review of the record it does not appear that he was told to do this, nor that he promised he would. It is possible that appellant would have been prejudiced to a greater extent if Dickson had testified that appellant was trying to elude authorities but did not state on what charges. Leaving the jury to speculate the nature of the offenses could have been more prejudicial to appellant.

During closing argument in the punishment stage of trial, the prosecutor asked the jury to not make a finding of the aggravating circumstance that the murder was committed for the purpose of avoiding or preventing a lawful arrest. Appellant contends that the prosecutor had wrongfully introduced evidence that appellant had been charged with two felonies, a misdemeanor, and a probation violation "knowing that it served no legitimate purpose."

We have no reason to believe the prosecutor acted with such a malicious intent. We do note, however, that evidence of these charges was properly admitted in the guilt stage of trial. See assignment number VI.

■ Appellant cites a number of comments made by the prosecutor during closing argument of each stage and assigns them as error. The comments drew no objections from defense counsel at trial and were waived, none amounting to fundamental error. *Myers v. State*, 623 P.2d 1035 (Okl.Cr.1981). Counsel for both the State and the defense have a liberal freedom to argue the evidence from their point of view. Not any slight excess will warrant reversal. *Frazier v. State*, 607 P.2d 709 (Okl.Cr.1980).

## VIII.

Appellant next argues that the trial court committed fundamental error in not giving the jury a cautionary instruction concerning the credibility of police informers. Appellant claims that both Billy Joe Dickson and Darvin Brison were given more lenient treatment on their own convictions as a result of having testified unfavorably against Smith, and therefore, the instruction was necessary.

■ Of course appellant does not contend the trial court could have known the sentences these two were to receive at a subsequent time. It was encumbent upon defense counsel to object to the instructions given and to request the cautionary instruction in order to preserve error. *Gee v. State*, 538 P.2d 1102 (Okl.Cr.1975). This he failed to do. Even if he had, the cautionary instruction would not have been necessary. The testimony of each of these witnesses was corroborated in part, and the evidence whether Dickson was promised "a deal" by the prosecutor was controverted. *Gee*, supra. *Compare Smith v. State*, 485 P.2d 771 (Okl.Cr.1971) (informer who had been promised before trial a return to military rank for cooperating offered the only evidence placing defendant at scene of crime). The jury was instructed to consider any interest or motive of a witness when

judging their credibility. This was sufficient.

## IX.

Appellant next assigns as error the trial court's failure to instruct the jury on second degree felony murder and first degree manslaughter. The only offense instructed upon was first degree malice aforethought murder. Defense counsel did not object to the instructions given and did not request that any be given, thus, waiver of error resulted. *Thompson v. State,* 705 P.2d 188 (Okl.Cr.1985).

■ The evidence presented did not warrant instructions upon these offenses. Appellant contends the evidence suggested the homicide occurred during the course of a robbery, but not with the use of a firearm or dangerous weapon; thus, supporting second degree felony murder instructions. Appellant's contention that a hammer is not a dangerous weapon is erroneous. In *Pitts v. State,* 649 P.2d 788 (Okl. Cr.1982), we held that it is the manner an object is used which makes it a dangerous weapon when used in a robbery. So, had a felony murder instruction been warranted, it would still have been murder in the first degree.

■ We further find that manslaughter instructions were not justified under the evidence. The victim was brutally beaten on the head with a blunt object. He was so severely beaten that the medical examiner observed that the skull crumbled when lifted apart. Appellant told Dickson that he "took him [the victim] out," and the defense he offered at trial was that of alibi. There was no evidence introduced suggesting that the homicide was other than premeditated.

## X.

■ Appellant next assigns as error the trial court's failure to give an instruction concerning impeachment by prior convictions. As noted previously, appellant did not object to the instructions given, nor request any. Waiver resulted. *Jetton v. State,* 632 P.2d 432 (Okl.Cr.1981). The two witnesses which had prior convictions and were impeached by them were witnesses called by the State. The benefit of the instruction would have been to the State as it serves to limit the jury's consideration of those convictions to the issue of credibility. The lack of an instruction could not have harmed the appellant.

## XI.

The jury found during the sentencing stage of trial the existence of the aggravating circumstance that appellant "was previously convicted of a felony involving the use or threat of violence to the person." 21 O.S.1981, § 701.12(1). Appellant complains the evidence was inadequate that his prior felony conviction involved the use of violence or threat of its use, and that the jury should not have considered this aggravating circumstance.

At trial, the only evidence introduced of the prior conviction was the Judgment and Sentence entered along with the testimony of the Court Clerk of Logan County identifying it as the conviction of Phillip DeWitt Smith. The Judgment and Sentence reflects that the appellant entered "his plea of guilty to the charge of rape, first degree (force and fear)" in 1980. Appellant argues that the terms force and violence are not necessarily synonymous terms, therefore, a violent rape was not proven.

■ The first degree rape statute in effect at the time of appellant's conviction provided:

Rape committed by a male over eighteen years of age upon a female under the age of fourteen years, or incapable through lunacy or unsoundness of mind of giving legal consent; or accomplished with any female *by means of force overcoming her resistance, or by means of threats of immediate and great bodily harm,* accompanied by apparent power of execution, preventing such resistance, is rape in the first degree. In all other cases rape is of the second degree. (Emphasis added.)

21 O.S.1971, § 1114. We are of the opinion that first degree rape committed with the use of force or fear as defined by this

statute is a violent crime within 21 O.S. 1981, § 701.12. Appellant's Brief provides us with the definition of violence from Webster's New World Dictionary (2d College Edition 1979): "1. *physical force* used so as to injure 2. *powerful force*, as of a hurricane 3. violent act or deed 4. harm done by violating rights, etc." (Emphasis added.) The word "force" is actually used to define violence.

In *Brewer v. State*, 650 P.2d 54 (Okl.Cr. 1982), *cert. denied*, 459 U.S. 1150, 103 S.Ct. 794, 74 L.Ed.2d 999 (1983), we held that if it is not apparent from the Judgment and Sentence that the felony involved violence or threat of its use, the State must present additional information that it did. We did not hold that a Judgment and Sentence is never sufficient as appellant now contends.

■ We cannot agree with appellant either that the name Phillip DeWitt Smith is such a common name as to require additional proof that appellant was the same person who was previously convicted. *Compare Smith v. State*, 695 P.2d 1360 (Okl.Cr.1985) (James E. Smith too common to use Judgment and Sentence alone from old out-of-state conviction). Though the judgment and sentence gave the name as Phillip D. Smith, the Court Clerk testified that the offender's name was Phillip De-Witt Smith. There was no error.

## XII.

■ Appellant asserts that fundamental error occurred because the trial court did not specifically define for the jury the elements of the aggravating circumstance that there existed the probability that the appellant would commit future acts of violence which would constitute a continuing threat to society. In *Liles v. State*, 702 P.2d 1025, 1031 (Okl.Cr.1985), *cert. denied*, — U.S. —, 106 S.Ct. 2291, 90 L.Ed.2d 732 (1986), we reaffirmed our position that no additional explanation is needed for this statutory language. It's clear and simple, and no explanation was requested at trial.

## XIII.

Appellant contends that neither Oklahoma statutes nor the trial court's instruc-

tions provided the jury particularized guidelines for considering mitigating circumstances and caused the sentence of death to be unconstitutionally imposed.

■ The jury at trial was instructed in accordance with 21 O.S.1981, § 701.11, that the death penalty could not be imposed unless they found that the aggravating circumstances outweighed the mitigating circumstances. They were further instructed that mitigating circumstances were those which in fairness and mercy could be considered as extenuating or reducing the degree of moral culpability. We have previously held, and now reaffirm our position, that these instructions are sufficient to prevent arbitrary or discriminatory application of the death penalty. *Liles*, supra; *Brogie v. State*, 695 P.2d 538 (Okl.Cr.1985); *Chaney v. State*, 612 P.2d 269 (Okl.Cr.1980), *modified on other grounds sub nom.*, 730 F.2d 1334 (10th Cir.1984).

## XIV.

Appellant again argues as under assignment XII, that the aggravating circumstance of "continuing threat" is vague on its face and now urges that this Court has been evaluating this factor in an arbitrary manner. We have on a number of occasions upheld the constitutionality of this aggravating circumstance and its application. We recently addressed this exact issue in *Foster, supra*. This assignment is without merit.

## XV.

The jury in this case found the aggravating circumstance that the killing was "especially heinous, atrocious or cruel" to be present. Appellant does not contend that the jury's finding was unwarranted under the evidence, but rather that the circumstance is being applied in an unprincipled, and therefore, unconstitutional manner. We find from the record that they were properly instructed of the definition of these terms, and we again find this issue to be without merit. *Foster, supra; Liles, supra; Cartwright v. State*, 695 P.2d 548

(Okl.Cr.1985), *cert. denied,* 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661.

## XVI.

Appellant next urges that he was denied a jury which represented a fair cross-section of the community and was given one guilt prone because one juror who could not impose the death penalty was excused. A careful review of the record reveals that the one juror who was excused for cause was not excused on this basis. Both attorneys requested she be excused because she knew some of the witnesses and she thought she might be influenced as a result.

■ Appellant further contends two veniremen who expressed doubts about the death penalty were improperly excused by the prosecutor using peremptory challenges. Peremptory challenges are discretionary and are not usually grounds for review. While the United States Supreme Court has recently held that these challenges may be scrutinized on charges of intentional racial discrimination, *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Court otherwise left intact the unfettered exercise of these challenges. This assignment is without merit.

## XVII.

■ Appellant contends the trial court erred in not giving the jury an instruction he requested that if they could not reach a decision on punishment the court would impose a sentence of life imprisonment. Again, this issue has been previously addressed by this Court. In *Brogie v. State,* 695 P.2d 538 (Okl.Cr.1985), this Court held that such an instruction would amount to an invitation to the jury to avoid their unpleasant task. Though the trial court may intervene in the jury process if they cannot reach a decision within a reasonable time, 21 O.S.1981, § 701.11, this is not a proper concern for the jury.

## XVIII.

One of the five aggravating circumstances with which the appellant was charged was that the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. 21 O.S.1981, § 701.-12(5). As mentioned earlier, evidence relevant to this issue was introduced in the guilt stage. During the sentencing stage, the testimony of the Logan County Court Clerk and of the Oklahoma County Court Clerk was introduced of outstanding arrest warrants for the appellant. Besides those previously discussed, there were charges against appellant in Oklahoma County for attempting to elude a police officer and leaving the scene of an accident of personal injury. Appellant contends that since all of this was evidence of only charges, and not felony convictions, the evidence should not have been introduced.

■ As we previously held, evidence of the other crimes was admissible for proving motive. This Court has held that the existence of this particular aggravating circumstance is determined by viewing the accused's state of mind. *Banks v. State,* 701 P.2d 418, 426 (Okl.Cr.1985). The State is allowed to introduce any competent relevant evidence as to aggravating circumstances charged if the accused has been properly notified. 21 O.S.1981, § 701.10.

■ We find appellant was given timely notice that this evidence was to be introduced. But appellant further contends that the prosecutor did not act in good faith because in closing arguments, he asked the jury to not make a finding of this aggravating circumstance. Appellant contends the prosecutor introduced the evidence to prejudice him. This Court is not willing to presume such an insidious motive. We do note that defense counsel did not demur to the evidence of this aggravating circumstance before it went to the jury. We find no error.

## XIX.

Appellant contends he was denied his Sixth Amendment right to effective assistance of counsel because of certain errors made at trial. He points out a number of purported failures on trial counsel's part, and asserts that they made the result of trial unreliable. *Strickland v. Washing-*

*ton,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

He claims trial counsel should have objected to the court's method of conducting voir dire. The trial court asked all questions which pertained to the juror's ability to impose a sentence of death. Voir dire methods are discretionary with the trial court, and we find that there were no grounds for reversal from that which was conducted. *Banks v. State,* 701 P.2d 418 (Okl.Cr.1985).

Appellant asserts that trial counsel's performance was deficient in announcing he would present an alibi defense and then not doing so. Appellant's alibi witness was called by the State, and offered at such time whatever evidence that was available. Appellant testified and gave evidence of his alibi also.

Appellant claims that his trial attorney should have objected to prosecutorial misconduct, but did not. We do not find misconduct by the prosecutor which was so egregious as to be outcome determinative. *Strickland.*

■ Appellant's counsel argued in closing during the guilt stage that the case would call for the "very severe one" in punishment. He urged the jury to not find guilt on the circumstantial evidence. He made similar references during argument in both stages. Appellant now contends he was prejudiced by this concession that it was a death penalty case.

We cannot say that these statements were not a matter of trial strategy. Though in hindsight appellate counsel would have chosen another strategy, we will not invade trial counsel's judgment. *Coleman v. State,* 693 P.2d 4 (Okl.Cr.1984).

Appellant contends that trial counsel erred in not requesting instructions on lesser included offenses. We held earlier in this case that the instructions were not called for, therefore, it was not error to fail to request them.

Finally, appellant urges that trial counsel should have challenged the aggravating circumstances and made a case for life imprisonment in the penalty stage. Appel-

lant's criticism of counsel's performance is that he failed to investigate and present mitigating evidence. Yet there is no hint as to what evidence might have been offered in mitigation.

Defense counsel did urge the jury to give his client life imprisonment and offered some evidence in mitigation. We cannot say that counsel failed to subject the prosecution's case to meaningful adversarial testing. *United States v. Cronic,* 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Appellant has not overcome the presumption that assistance of counsel was effective. *Strickland, supra.*

## XX.

Finally, appellant contends that his sentence was disproportionate compared to sentences imposed in other similar cases. This Court is no longer required to perform proportionality review. 21 O.S.Supp.1986, § 701.13; *Foster v. State,* 714 P.2d 1031 (Okl.Cr.1986) cert. denied, —— U.S. ——, 107 S.Ct. 249, 93 L.Ed.2d 173.

## XXI.

In consideration of the foregoing, we find that the jury's findings beyond a reasonable doubt of the aggravating circumstances that: 1) appellant had previously been convicted of a felony involving the use or threat of violence; 2) the murder was especially heinous, atrocious, or cruel; and, 3) there existed the probability that appellant would commit criminal acts of violence that would constitute a continuing threat to society, were supported by the evidence. We do not find reason to believe that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. 21 O.S.Supp.1986, § 701.13.

Finding no error warranting reversal or modification, judgment and sentence is AFFIRMED.

BRETT, P.J., concurs.

PARKS, J., dissents.

PARKS, Judge, dissenting:

In his second assignment of error, appellant claims that the trial court abused its discretion and thus committed reversible error in admitting State Exhibits Nos. 15, 18 and 19, which consisted of three 8″ × 10″ black and white glossy photographs taken while the deceased was on the autopsy table. In two of the three autopsy photographs, the victim's head was shaved, exposing numerous lacerations and a depressed fracture. The third showed the skin surrounding the skull peeled back revealing mucous and brain tissue, as well as a semi-circular missing section of the skull. In *Oxendine v. State*, 335 P.2d 940, 943 (Okl.Cr.1958), this Court reversed a murder conviction and sentence of death primarily on the basis of the admission of autopsy photographs even though the defendants had "admitted the crime in intricate detail." In *Oxendine* this Court stated:

> Had there been a conflict as to the … cause of death or location of the wounds, or an issue to which the photos were relevant … they would have been admissible **had they been taken prior to the performance of the autopsy. But the autopsy was not the handiwork of the defendant and could, under the circumstances, serve no other purpose than to arouse the emotions and passion of the jury** … [T]he photos were wholly inadmissible in the form presented and their admission was an abuse of the trial court's discretion … The whole procedure seems to have been so unnecessary and was highly prejudicial and forces a reversal.

*Id.* (emphasis added) As was pointed out in *Oxendine*, autopsy photographs like the ones here do not show the crime scene as it existed prior to the cutting and other surgical procedures performed by the medical examiner, but instead portray the handiwork of the medical examiner and in that sense consist of evidence manufactured by the State to be used against an accused. In the instant case, defense counsel specifically objected to the aforementioned photographs and, in asserting that they were being offered solely to inflame the jury, he stated:

> There is … not any controversy that the victim was murdered with something that resembled a hammer. We haven't contested that fact from opening statement on, and we're not contesting it today. And I don't see how, with that understanding, those would become relevant in this case.

(Tr. 548) As was true in *Oxendine*, whatever probative value the photographs possessed was not related to any material issue in the case. The medical examiner testified concerning the nature of the injuries and the probable cause of death. In this instance, where the cause of death was conceded to have been caused by numerous blows from a blunt instrument resembling a hammer, the probative value of the photos was substantially outweighed by the danger of unfair prejudice. *See Ritchie v. State*, 632 P.2d 1244, 1245–46 (Okl.Cr. 1981); *Oxendine v. State*, 335 P.2d 940, 943 (Okl.Cr.1958). *See also* 12 O.S.1981, § 2403.

Moreover, the evidence against the appellant was entirely circumstantial, and cannot properly be termed overwhelming. In *Thompson v. State*, 724 P.2d 780, 783 (Okl. Cr.1986), this writer concurred in Judge Brett's opinion holding that the improper admission of gruesome photographs did not affect the jury's determination of guilt in view of the extremely strong evidence of guilt. *Thompson*, however, is distinguishable from the instant case in two significant ways. First, the instant case involves extremely inflammatory autopsy photographs whereas *Thompson* did not; and second, the evidence in the instant case does not even come close to the "strong" evidence of guilt that was present in *Thompson*. *Id.*

The State argues that the autopsy photographs were critical to their theory that the victim was killed with a hammer. However, the medical examiner's testimony adequately explained the semi-circular missing section of skull without the assistance of the highly inflammatory autopsy photographs. In addition, Dr. Hemphill testified that the cause of death was multiple injuries to the head caused by a blunt instru-

ment which had both a relatively sharp squared off corner and a round flat striking surface. He specifically stated that "the most probable instrument here would be a hammer." Accordingly, in light of the extremely inflammatory nature of the autopsy photos, and the fact that they were merely cumulative and repetitive of the medical examiner's testimony, I conclude that whatever probative value they possessed was clearly outweighed by the danger of unfair prejudice. *See Ritchie v. State,* 632 P.2d 1244, 1245–46 (Okl.Cr. 1981); *Oxendine v. State,* 335 P.2d 940, 943 (Okl.Cr.1958). *See also* 12 O.S.1981, § 2403.

The prosecutor made no attempt to limit the prejudicial effect of the autopsy photographs through cropping or by using drawings or diagrams. In light of the purely circumstantial nature of the case, it is apparent that the prosecutor strategically used the autopsy photographs to inflame the jury so as to influence it to return a verdict of guilty and a sentence of death. The error in admitting the autopsy photographs clearly falls within this Court's mandatory duty to conduct a sentence review to determine whether the death sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. 21 O.S.Supp.1985, § 701.13(C)(1). The record evidence against the appellant cannot properly be termed overwhelming so as to negate improper influence of the jury respecting its finding of guilt and, insofar as the error occurred during the guilt phase of the trial, I cannot say that the appellant received a fair trial consistent with Article II, section 20 of the Oklahoma Constitution. *See Jones v. State,* 610 P.2d 818, 820 (Okl.Cr.1980). Accordingly, I would reverse and remand for a new trial.